620 A.2d 989

**David SWANN**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al.**

**No. 658, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Feb. 1, 1993.

Reconsideration Denied March 30, 1993.

Wilner, C.J., concurred in part, dissented in part, and filed opinion.

**366**

Alan L. Fishbein (Fishbein & Fishbein, P.A., on brief), Ellicott City, for appellant.

Kelly A. Saunders (Susan M. Kalil and Carr, Goodson & Lee, P.C., on brief), Rockville, for appellees, Prudential and Carey Winston.

Francis X. Quinn (John A. Rego and Anderson & Quinn, on brief), Rockville, for appellee, Dover.

Argued before WILNER, C.J., and MOYLAN and BISHOP, JJ.

BISHOP, Judge.

Appellant, David Swann ("Swann"), filed a complaint against Prudential Insurance Company of America ("Prudential"), Carey Winston Company ("CW"), and Dover Elevator Company ("Dover") (hereinafter collectively referred to as "Appellees") in the Circuit Court for Montgomery County, alleging negligent maintenance of an elevator (Count I) and product liability (Count II). Swann dismissed Count II. A jury trial was held on Count I. At the close of Swann's case and at the conclusion of the trial, Prudential and CW moved for judgment. The trial court denied their motions and the jury found in favor of Appellees. Swann

filed a timely notice of appeal. Prudential and CW filed a cross-appeal.

## *Issues*

### Swann's appeal

I. Whether the trial court erred in excluding evidence concerning:

(A) the elevator maintenance study performed by the Newmont Elevator Company;

(B) post-accident misleveling incidents;

(C) deposition testimony of corporate officials of Dover and national accident data of other elevator misleveling incidents of Dover?

II. Whether the trial court erred in admitting evidence concerning:

(A) collateral source payments;

(B) late disclosed expert witness opinions;

(C) opinions of witnesses neither disclosed nor qualified as expert witnesses;

(D) a race discrimination suit involving the appellant?

III. Whether the trial court erred in failing to give:

(A) a *res ipsa loquitur* instruction;

(B) a missing evidence instruction;

(C) an instruction that a violation of a statute can be considered evidence of negligence; and

(D) an instruction that the duty owed to business invitees by a property owner is non-delegable?

### Prudential and CW's Cross–Appeal

IV. Did the trial court err by denying Prudential's and CW's motions for judgment?

(A) Was there evidence that Prudential and CW had notice of a misleveling problem?

(B) Was there evidence that a breach of duty owed by CW proximately caused the elevator to mislevel on February 2, 1987?

Since we decide this appeal in favor of Prudential and CW based on issues I, II, and III, we need not address their cross-appeal.

## Facts

On February 2, 1987, Swann and a co-worker, Murtha Donovan, Jr. ("Donovan"), summoned an elevator (designated "elevator number two") located in their place of employment. When the elevator arrived, it did not level properly with the floor, and Swann tripped and stumbled while boarding. The elevator was "[s]omewhere around a foot," "[s]omewhat greater than about a foot," or as many as eighteen inches below floor level. Ordinarily, the height of the elevator's door opening was seven feet. As a result of the incident, Swann claimed he sustained severe, painful and permanent personal injuries.

After the elevator arrived but before entering it, Swann looked into the elevator and saw no exiting passengers. Neither Swann nor Donovan noticed the elevator had misleveled until after Swann stepped into the elevator. At trial, Swann's expert in the field of human factors psychology opined that when an elevator door opens, people ordinarily "look forward at essentially their own eye level, first to see that the door opens; second, to see that nobody is coming out; and if there is time later on, there are two or three seconds available, to look towards the walking surface itself." When asked if he had an opinion "whether an elevator that was between six to twelve inches below the floor level would be able to be detected in sufficient time to allow the person to keep from stepping in or falling into the elevator," he added: "If somebody knew to look, if they expected the problem to occur, yes; if they did not, no.... I would not normally expect people to do a safety inspection adequate to determine that the elevator has not leveled, because they would have no reason to do so."

Elevator number two, an automatic self-service elevator, was located in a building owned by Prudential, managed by CW, and leased exclusively to Swann's employer, IBM.

Dover manufactured and installed the elevator, and has been under contract with CW to maintain the elevator ever since its installation.

The Dover Master Maintenance Service Agreement ("the Agreement") in effect from July 1, 1985 through the date of the incident required that Dover "[r]egularly and systematically examine, adjust, lubricate and, whenever required by the wear and tear of normal elevator usage, repair or replace the equipment (except for the items stated hereafter), using trained personnel directly employed and supervised by [Dover] to maintain the equipment in proper operating condition." Although the Agreement specifically excludes several elevator components and associated systems, the component that Swann contends caused the misleveling, the "14 and 15 contacts", was not excluded. Further, CW agreed that it shall remain in exclusive "possession or control of the equipment" and that it would prohibit "others [from] mak[ing] changes, adjustments, additions, repairs or replacements to the equipment."

When an elevator needed repair, IBM contacted CW. CW did not attempt to repair the elevators; rather, it turned the elevator off when a problem arose and placed a call to Dover. Joan Berman, CW's senior vice-president in charge of property management, testified that "[CW] cannot do anything on th[e] elevator ... [b]ecause the only people that are allowed to work on the elevator based on the [Agreement] are the people who come from Dover Elevator." David Geist, CW's chief building engineer, testified that he was not permitted to work on the elevator. When asked why, he responded: "[b]ecause that is why we have a contract with Dover to repair the elevators. I do not know anything about repairing the elevators."

Ronald Bothell ("Bothell"), a maintenance repairman for Dover, testified that he would spend six hours every other week performing preventive maintenance on the four elevators in Prudential's building. On as many as four occasions within a span of six weeks preceding the incident—December 17, 1986, January 7, 1987, January 21, 1987, and Janu-

ary 28, 1987—and on the day of the incident, Dover was advised of misleveling problems with elevator number two. A repair order dated January 7 indicates that the 14 and 15 contacts were "burned closed" and that Bothell cleaned the contacts and replaced brushes. According to Donald Moynihan ("Moynihan"), Swann's expert in the field of elevator engineering, installation, design, and maintenance, elevator number two misleveled because the 14 and 15 contacts were filed clean rather than replaced. Although Dover did not present expert testimony on elevator maintenance and repair, Bothell testified that the elevator could not have misleveled any more than an inch based upon his observations and experience and, in any event, cleaning the 14 and 15 contacts was proper and adequate because the contacts were not welded together, they merely had an accumulation of crystallized dust particles.

Other facts will be provided, *infra,* as appropriate to the discussion.

## *Discussion*

### I

Swann first contends that the trial court erred when it excluded testimony and other evidence that was both relevant and material to the issues in dispute.

> "For an item of evidence to be admissible, it must be both relevant and material. Evidence is material if it tends to establish a proposition that has legal significance to the litigation. Evidence is relevant if it is sufficiently probative of a proposition that, if established, would have legal significance to the litigation."

*Wilson v. Morris,* 317 Md. 284, 291, 563 A.2d 392 (1989) (*quoting Paige v. Manuzak,* 57 Md.App. 621, 632, 471 A.2d 758, *cert. denied,* 300 Md. 154, 476 A.2d 722 (1984)). This notwithstanding, we must adhere to "the long-standing principle that the admission or exclusion of evidence is a function of the trial court which, on appeal, is traditionally viewed with great latitude." *Ellsworth v. Sherne Lingerie,*

*Inc.*, 60 Md.App. 104, 118, 481 A.2d 250 (1984), *rev'd on other grounds*, 303 Md. 581, 495 A.2d 348 (1985). "An appellate court will only reverse upon finding that the trial judge's determination was 'both manifestly wrong and substantially injurious.'" *Lomax v. Comptroller of the Treasury*, 88 Md.App. 50, 54, 591 A.2d 1311 (1991) (*quoting Paige*, 57 Md.App. at 633, 471 A.2d 758).

With these principles in mind, we shall consider whether the trial court abused its discretion in refusing to admit the evidence Swann proffered.

### (A)

### Newmont Elevator Company Study

■ Swann offered evidence of an evaluation report the Newmont Elevator Company (an elevator consulting firm) prepared at Prudential's request. According to Swann, the report criticized Appellees for failing adequately to stock spare parts on site and failing to retain repair orders from Dover's service calls. Swann argues that the study is relevant and material to two issues: first, the inadequate supply of spare parts is relevant to the jury's resolution of whether a particular electrical contact should have been replaced during the service call immediately prior to the incident; and second, the failure to maintain call back and repair order records prevented recognition of the pattern of misleveling incidents occurring before the incident. Swann contends the study defines the standard of care owed by Appellees with respect to the care and maintenance of the elevator and therefore, is an exception to the rule excluding evidence of subsequent remedial measures.

Appellees point out, however, that the study was not prepared until November 1987—nine months after the incident—and, therefore, the trial court properly excluded it. They assert that the report was not probative of a breach of duty owed by Prudential, CW, or Dover, or of any notice they may have had that the elevator would mislevel. We agree.

The report was prepared nine months after the incident and is, therefore, not probative of notice or a breach of duty. The report is not a "subsequent remedial measure" because it is not a change in Appellees' conduct. Thus, the report does not define the standard of care. *See* 5 Lynn McLain, *Maryland Practice* § 407.1 (1987 & Supp.1992).

Also, the proffered evidence is cumulative to Moynihan's testimony. Moynihan testified that the spare parts maintained in the elevator control room were inadequate for preventive maintenance. Further, Moynihan testified that CW's failure to keep the call back and repair order records was a poor management technique and prevented them from recognizing the repetitive nature of the problem. The trial court "may exclude evidence deemed to be cumulative." *Lomax*, 88 Md.App. at 54, 591 A.2d 1311. Accordingly, the trial court's decision to exclude the report was not "manifestly wrong and substantially injurious."

### (B)

### Post–Accident Misleveling Incidents

██ Swann contends that the trial court precluded him from introducing evidence of misleveling incidents that occurred immediately after the February 2nd incident. Swann argues that subsequent misleveling incidents were relevant and material facts necessary to give the jury a perspective that demonstrates that Bothell, Dover's repairman, did not correct the problem with the elevator on the occasions prior to the incident. Swann maintains that this ruling prohibited him from fully developing his theory of negligence. We disagree.

During a pre-trial hearing on a motion *in limine*, Swann argued that the post-incident occurrences were probative of the issues of notice and Appellees' ability to correct the misleveling problem. To support his position, Swann relied on *Hagan v. Washington Suburban Sanitary Comm'n*, 20 Md.App. 192, 314 A.2d 699 (1974), and cases cited therein, and in his brief cites *Wilson*, 317 Md. 284, 563 A.2d 392.

Swann's reliance is misplaced. These cases involve situations where the plaintiff attempted to introduce evidence of subsequent remedial *measures*, or changes in subsequent *practices*, not evidence of similar post-incident *occurrences*. In *Wilson*, for example, the Court of Appeals held that a change in patient monitoring policies made after a patient was injured as the result of a fall from a wheelchair was "admissible as evidence of the standard of care required under the circumstances," although inadmissible as an *"admission* of negligence or culpability." 317 Md. at 301, 563 A.2d 392 (emphasis in original).

It is clear that the subsequent incidents were not "subsequent remedial measures," which based on Maryland law are admissible under limited circumstances. It was undisputed that the elevator misleveled on February 2nd. Evidence of mislevelings after the incident was irrelevant and would have been unduly prejudicial. The trial court did not abuse its discretion.

## (C)

### Corporate Officials' Deposition Testimony

The trial court refused to admit into evidence the deposition testimony of four Dover officials. Swann contends that the deposition testimony was relevant and material because it established: 1) there were numerous misleveling incidents nationwide greater than the one to two inches Bothell claimed was the maximum extent the elevator could mislevel; 2) Dover knew of the large number of misleveling accidents on similar elevators and was on notice of this type of problem; 3) Dover had a preventative maintenance checklist for use by mechanics; 4) Dover had a document retention policy; 5) the frequency and percentages of tripping accidents caused by misleveling accidents prior to February 2, 1987; and, 6) Dover knew of the existence of a substantial number of misleveling problems in its elevators and was on notice of the magnitude of the problem prior to February 2, 1987.

Appellees argue that since Count II, the product liability count, was dismissed, the only remaining count was negligent elevator maintenance and repair, and therefore, much of the evidence Swann attempted to introduce was irrelevant. Appellees maintain that evidence of nationwide claims may have been relevant to Count II, but had no relevance as to whether they had notice of misleveling resulting from the improper maintenance or repair of elevator number two. Accordingly, the evidence would have confused the jury and prejudiced Appellees. As to the use of the exhibits during cross-examination of Bothell, Appellees contend that the court simply refused to allow cross-examination of Bothell on issues involving elevators that were not serviced by him or of which he had no personal knowledge. Appellees explain that all other excluded evidence was cumulative to the testimony of other witnesses.

We perceive no reversible error. Dover's document retention policy was admitted into evidence during Swann's direct examination of Moynihan. Furthermore, Bothell testified that Dover had a preventive maintenance checklist. Thus, the deposition testimony regarding Dover's document retention policy and preventive maintenance checklist was cumulative and its exclusion was harmless.

██ The deposition testimony indicating that Dover knew of misleveling problems in other elevators is not material to this case since Count II was dismissed. Other elevators could have had mechanical problems while elevator number two was operational. Conversely, elevator number two could have had mechanical problems while other elevators, nationwide, were operational. The jury could not make any rational inference regarding the alleged negligent repair and maintenance of elevator number two from the proffered deposition testimony. Accordingly, the trial court did not abuse its discretion. *See* McLain, *supra,* §§ 401.1, 402.1.

Swann attempted to impeach Bothell's testimony by introducing deposition testimony of misleveling incidents greater

than the one to two inches he claimed was the maximum extent the elevator could mislevel. As discussed in Section II(C), *infra*, Bothell testified as a fact witness to his observations concerning elevator number two. The trial court, by excluding evidence of misleveling incidents that Bothell did not observe, properly limited cross-examination to Bothell's experience with elevator number two.

## II

Swann next contends that the trial court abused its discretion by admitting testimony and other evidence otherwise inadmissible under Maryland law.

### (A)

#### Evidence of Collateral Source Payments

 Swann argues that the court erred by allowing questions regarding Swann's receipt of workers' compensation and IBM's medical disability plan payments. Swann maintains that the evidence was being used in an attempt to reduce Appellees' liability by showing that Swann continued to receive income after the incident. Swann contends that the collateral source rule allows admission of collateral source payments only if there is a preliminary showing of malingering or exaggeration of injury and that there was no evidence supporting malingering or exaggeration *sub judice.*

In *Kelch v. Mass Transit Admin.,* 42 Md.App. 291, 400 A.2d 440 (1979), *aff'd,* 287 Md. 223, 411 A.2d 449 (1980), we were faced with a near identical situation. In that case, the trial court denied the plaintiffs' motion *in limine* in which they requested that the trial court restrict the defendants "from mentioning social security disability benefits being paid to the [plaintiff] since they were funds paid ... from a collateral source and the [defendant] was entitled to no credit in determining the jury's assessment of damages because of such collateral funds." *Id.* at 295, 400 A.2d 440.

We turned to *Leizear v. Butler*, 226 Md. 171, 172 A.2d 518 (1961), in which the Court of Appeals

> noted with approval that the evidence of collateral payments is admissible if there is evidence in the case of malingering or exaggeration of injury but evidence as to collateral payments is inadmissible in the absence of evidence of malingering or exaggeration or where the real purpose of the evidence offered as to collateral sources is the mitigation of liability for damages of the defendant.

*Kelch*, 42 Md.App. at 296, 400 A.2d 440 (citations omitted). We held that the defendant

> raised the issue of exaggeration of the plaintiff's injuries by the [defendants'] cross-examination of the attending physician during which the physician conceded that there was, at least, a suggestion that the [plaintiff] was unwilling to work to seek employment possibly because the social security benefits the [plaintiff] received were greater than he might have earned if he were employed.

*Id.* at 296–97, 400 A.2d 440.

In the case *sub judice*, the Appellees made clear during the pre-trial hearing on the motion *in limine* that the evidence was to be introduced solely to show Swann's motivation for not returning to work. During the trial, there was, "at least, a suggestion" of malingering and exaggeration. For example, Swann's job at IBM was sedentary in nature. Medical experts testified that Swann was capable of sedentary work. There was also evidence that there was "no psychiatric disability that would keep [Swann] from working, and little in the way of physical." A vocational rehabilitation consultant testified that he saw no reason why Swann could not be in the work force. Furthermore, one of Swann's own treating physicians said that he "[could] get on with his life." Swann testified that he never tried to get another job. In 1989, Swann was able to drive a car for long periods of time and cut his lawn. In 1990, he worked out at a gym three times a week, two hours each time, for three months. At the time of trial,

Swann did his own laundry and dishes, and bought his own groceries.

At the conclusion of the trial, the court properly instructed the jury as follows:

> Now, whenever evidence has been admitted for one purpose you should not consider it for any other purpose. If you decide that the plaintiff is entitled to recover lost earnings you are not to use any evidence of payment received by the plaintiff for sick leave or disability payments or workman's compensation.
>
> Evidence of those payments have been admitted in this case for purposes other than the calculation of lost earnings such as it bears on the plaintiff's motivation to work.

Furthermore, there was sufficient evidence of malingering and exaggeration, and Swann failed to establish that "the real purpose of the evidence offered as to collateral sources [was] the mitigation of liability for damages...." *Id.* at 296, 400 A.2d 440. Accordingly, we hold that the trial court did not abuse its discretion when it admitted evidence of collateral source payments.

### (B)

### Late Disclosure of Expert Witnesses

■ Swann argues that the trial court abused its discretion when it denied his motion to exclude the testimony of improperly disclosed expert witnesses. He contends that Appellees were asked in interrogatories, on May 2, 1989, to identify expert witnesses expected to be called at trial, but, at the time, did not respond to the question. In a letter dated December 4, 1991, CW and Prudential first identified experts they intended to call at trial. The experts were also identified in CW and Prudential's calendar call statement filed December 19, 1991, in Dover's calendar call statement filed December 26, 1991, and in CW's and Prudential's answers to interrogatories received by Swann on December 31, 1991.

Swann filed a motion to exclude the testimony of Appellees' experts, which the trial court denied on January 3, 1992. Swann argues: 1) "Appellees waited until the eve of trial which was scheduled for January 6, 1992 to disclose the experts hoping that this 'eleventh hour' tactic would interfere with [Swann's] counsel's trial preparation"; and, 2) violated the trial court's order for pre-trial procedures which provided that all discovery be completed within 15 days of the Calendar Call (scheduled for December 26, 1991).

Appellees maintain that the trial court correctly admitted testimony of their experts because Swann was notified of the identity of the experts, albeit informally, on December 4, 1991. Appellees explain that the notification was informal in keeping with the procedurally informal tone of the case, and that Swann deposed each of the experts prior to trial; therefore, Swann was not prejudiced by any violations of discovery rules or the trial court's pre-trial order. We agree.

One of the fundamental and principal [sic] objectives of the discovery rules is to require disclosure of facts by a party litigant to all of his adversaries, and thereby to eliminate, as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind, concerning the facts that give rise to the litigation. *Klein v. Weiss*, 284 Md. 36, 55, 395 A.2d 126 (1978); *see also Hadid v. Alexander*, 55 Md.App. 344, 351, 462 A.2d 1216 (1983). " 'A trial judge is vested with a large measure of discretion in applying sanctions for failure to adhere to the discovery rules.' " *Snyder v. Snyder*, 79 Md.App. 448, 461, 558 A.2d 412 (*quoting Starfish Condominium Assoc. v. Yorkridge Serv. Corp.*, 295 Md. 693, 712, 458 A.2d 805 (1983)), *cert. denied*, 317 Md. 511, 564 A.2d 1182 (1989). Although Appellees technically violated discovery rules and the court's pre-trial order, Swann was not prejudiced. Swann had an opportunity to, and did in fact, depose the experts prior to trial. Appellees' conduct may have made trial preparation more difficult, but they did not hamper

Swann's efforts. Thus, the trial court did not abuse its discretion under the circumstances *sub judice.* We do not in any way intend to give the impression that we approve of Appellees' actions. Counsel should comply with discovery schedules, and when violated, sanctions may be imposed.

### (C)

### Opinions of Non–Expert Witnesses

Swann also contends that the trial court erred by allowing opinion testimony of three lay witnesses whose testimony was offered to rebut Moynihan's expert testimony. According to Swann, Berman, CW's property manager, testified that: 1) there had been an evolution in the field of property management in the use of consultants; 2) as of February 2, 1987, no elevator consultant had criticized the maintenance and care being provided to the elevators located in Prudential's building; 3) Prudential and CW delegated all of the responsibility for the care of the elevators to Dover; 4) she was satisfied with Dover's performance in maintaining these elevators; and, 5) Appellees did not breach a duty of care owed in the maintenance of the elevators.

Furthermore, Swann alleges that Geist, CW's building engineer, rendered improper expert testimony when he: 1) stated that no elevator consultant ever criticized the maintenance Appellees provided before the incident; 2) opined that the maintenance records and spare parts were not necessary; 3) testified regarding the frequency and the nature of the elevator misleveling problem; and, 4) stated his opinion that if a problem existed, he would have known about it.

Swann also complains that Bothell gave expert opinion testimony that the accident could not have happened in the way described by Swann and Donovan, including an analysis of the operation of the number 14 contact and its effect upon the operation of the elevator.

In short, Swann alleges that, because Appellees neither identified Berman, Geist, or Bothell as experts during dis-

covery, nor qualified each as an expert at trial, the trial court abused its discretion by allowing the witnesses' testimony over objection. We disagree.

"A lay witness may testify and give an opinion on matters as to which he or she has first-hand knowledge." *Waddell v. State,* 85 Md.App. 54, 66, 582 A.2d 260 (1990). "Whether to allow such testimony lies within the sound discretion of the trial court." *Yeagy v. State,* 63 Md.App. 1, 22, 491 A.2d 1199 (1985). Furthermore, "any nonexpert may testify to facts coming under his observation, even though the facts are such as are provable ordinarily by experts." *Galusca v. Dodd,* 189 Md. 666, 669, 57 A.2d 313 (1948). Of course, in order to preserve for appellate review the issue of the admission of "opinion" testimony, the complaining party must make a timely objection. "An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived." Rule 2–517(a). "When a party has the option of objecting, his failure to do so is regarded as a waiver estopping him from obtaining review of that point on appeal." *Fireman's Fund Ins. Co. v. Bragg,* 76 Md. App. 709, 719, 548 A.2d 151 (1988).

■ First, Swann failed to object to Berman's testimony concerning the use of elevator consultants and CW's delegation to Dover of responsibility for the elevator's maintenance. Thus, we will not address Swann's contentions. *See Bragg,* 76 Md.App. at 719, 548 A.2d 151. Second, Berman's testimony was not in response to a question calling for expert testimony. CW and Prudential asked Berman the following question:

> Can you tell us as of February 2, 1987 and before whether or not anyone—when I say anyone I mean an elevator consultant, an official from the State of Maryland, some government agency or whatever—has ever proposed or recommended to you that [CW] keep and maintain records of complaints and elevator maintenance work for themselves?

The question merely asked whether Berman, based upon her experience as CW's property manager, had ever been advised by a consultant or state official regarding inadequate record-keeping. Swann argues that by testifying that CW had never been told that they were acting improperly, Berman, in essence, testified that Appellees did not breach a duty of care owed in the maintenance of the elevators. The jury might have inferred from Berman's testimony that Appellees did not breach its duty of care; however, Berman did not so testify.

Geist was asked whether "in your experience not only with [CW] but at any point in time since 1959 has anyone ever recommended or suggested or proposed to you that you should keep and maintain records of an elevator company relating to any call backs, complaints and the maintenance of that elevator?" For the same reasons as discussed *supra,* this was a proper question for a lay witness. Moreover, Swann argues that Geist offered an opinion that the maintenance records and spare parts were not necessary, but we are unable to find support for this assertion in the record. Swann directs us to pages 841–43 of the record extract. The only question preserved for our review on those pages is the question addressed, *supra.* We have carefully reviewed the remaining portion of Geist's testimony and are unable to find what Swann says is there.

Swann next complains that "Geist was permitted, over objection, to testify about the frequency and the nature of the elevator misleveling problems." The only objection Swann made which appears in the record was to the *form* of the question, not to the fact the question called for improper expert testimony. Accordingly, the issue is not preserved for our review. *See Great Coastal Express, Inc. v. Schruefer,* 34 Md.App. 706, 724, 369 A.2d 118 ("if counsel volunteers his grounds at the time of the objection, he is bound on appeal to the grounds expressed"), *cert. denied,* 280 Md. 730 (1977).

■ Geist also testified that if a problem existed with the elevator, he would have known about it. Swann asserts that the question called for expert opinion testimony. Although Geist gave his "opinion" in the technical sense of the word, the opinion was based on first-hand knowledge and was not of the sort typically given by an expert.

Swann also complains that Bothell "testified in explicit detail about the operation of the number 14 contact and its effect upon the operation of the elevator" and that this was opinion testimony reserved for an expert. Again, we shall not address Swann's contention because Swann did not object to this line of questioning. *See Bragg,* 76 Md.App. at 719, 548 A.2d 151.

■ Swann did, however, preserve for review the question whether the trial court erred in admitting Bothell's testimony that the accident could not have occurred in the way it was described by Swann and Donovan. Bothell testified:

Q How much of a—. Basically because of the mechanism, the clutch that you are talking about, is there a point can there be a misleveling?

A Yes, there could be.

Q How much of a misleveling could there be?

MR. FISHBEIN: Objection, Your Honor.

THE COURT: Overruled.

THE WITNESS: Misleveling to what?

I mean, what are you—

BY MR. QUINN:

Q At the floor where the elevator, the car would stop either above or below a floor. Can that happen?

A Yes, sir.

Q And is there based upon—. To what extent could that be? Could it be five inches, ten inches, one inch, what could it be?

MR. FISHBEIN: Objection, Your Honor.

THE COURT: Overruled.

A I can only say one inch *because that is all I have ever seen.*

Q And the one inch would be what, could it be above or below?

A It could be either way.

Q Now, what you have just—. Again what you have stated, *is that the circumstances that you have observed during the time that you have been servicing the elevator at [Prudential's building]?*

A Yes, to all four [elevators]. Yes, sir.

(Emphasis added). It is clear from Bothell's testimony that his opinion was based solely on his observations of, and experience with, the elevators in Prudential's building. During cross-examination the following exchange took place:

Q Now, sir, you have expressed the opinion today that an elevator cannot mislevel by more than an inch or two, is that correct?

A I said I have never seen one.

We are satisfied that Bothell did not render an expert opinion. He simply stated that he never observed Prudential's elevators mislevel by more that an inch or two. *See Galusca*, 189 Md. at 669, 57 A.2d 313. Thus, the trial court properly allowed the testimony since it was based on Bothell's first-hand knowledge.

### (D)

### Race Discrimination Suit

■ Swann argues the trial court erred by allowing Appellees to ask Swann whether he was a party to a lawsuit against IBM. Swann contends the lawsuit, in which he alleged racial discrimination, played no part in the decision of Mr. Yingling, Swann's supervisor, or Dr. Corey, IBM's medical advisor, to recommend that Swann be placed on medical disability. Therefore, Swann maintains the suit was not relevant to the issues in the case. Swann adds that the two supervisors who made the decision to recommend

Swann for medical disability testified that they did not know of the discrimination suit until the eve of the trial *sub judice.*

Appellees contend the evidence was relevant to Swann's credibility, and therefore admissible. According to Appellees, Swann's theory of the case included the fact that he was permanently disabled, and retired from IBM on a medical disability as a result of the elevator incident. Appellees maintain: 1) that Swann was a disgruntled employee who was being harassed by his supervisor; 2) that, contrary to his testimony, he would not have remained at IBM until retirement age of 65; 3) that he was not motivated to return to work; and, 4) that IBM was motivated to grant him medical disability. Thus, Appellees argue the evidence was relevant to Swann's credibility, as well as to the theory that he received the medical disability for reasons other than the elevator incident. We agree. ·

### III

Swann next contends that the trial court erred by refusing to instruct the jury on several theories. A party is generally entitled to have its theory of the case presented to the jury if two conditions are satisfied: "(1) the instruction ... correctly state[s] the law, and (2) that law [is] applicable in light of the evidence before the jury." *Sergeant Co. v. Pickett,* 285 Md. 186, 194, 401 A.2d 651 (1979). If these conditions are met, and the trial court nevertheless refuses to instruct the jury, the court errs as a matter of law. *See id.* at 204, 401 A.2d 651.

### (A)

### Res Ipsa Loquitur

" 'The difficulties arising from the barrel of flour which rolled out of a warehouse window in 1863 and into the lives of tort lawyers,' compounded by Baron Pollock's casual statement (' *"res ipsa loquitur"* ') during argument of the case *Byrne v. Boadle,* 159 Eng.Rep. 299 (1863) are still with

us today." *Blankenship v. Wagner*, 261 Md. 37, 38–39, 273 A.2d 412 (1971). Swann argues that the trial court erred when it refused to instruct the jury on *res ipsa loquitur*.

Appellees do not contend Swann's requested instruction does not correctly state the law. In fact, Swann's proposed instruction was based on Maryland Civil Pattern Jury Instruction 19:5. *See* MICPEL, *Maryland Civil Pattern Jury Instructions* 446 (1984). Appellees argue the second prong of *Pickett's* two-part test was not satisfied, i.e., there was insufficient evidence before the jury to warrant a *res ipsa loquitur* instruction. We disagree.

We note preliminarily that both Swann and Appellees are apparently under the impression that the proposed *res ipsa loquitur* instruction was applicable to Prudential, CW, and Dover. The record clearly indicates, however, that the proposed instruction only made reference to Dover. It did not mention Prudential or CW. Accordingly, we shall consider only whether the trial court erred by refusing to instruct the jury on *res ipsa loquitur* with respect to Dover's liability.

The law concerning the doctrine of *res ipsa loquitur* was reviewed at length in *Chesapeake and Potomac Tel. Co. v. Hicks*, 25 Md.App. 503, 337 A.2d 744, *cert. denied*, 275 Md. 750 (1975). In *Hicks*, we recounted the evolution of what is now a three-part test to determine the doctrine's applicability. In order to invoke the doctrine of *res ipsa loquitur*, the plaintiff must establish:

"1. A casualty of a sort which usually does not occur in the absence of negligence.

2. Caused by an instrumentality within the defendant's exclusive control.

3. Under circumstances indicating that the casualty did not result from the act or omission of the plaintiff."

*Hicks*, 25 Md.App. at 516, 337 A.2d 744 (*quoting Leikach v. Royal Crown Bottling Co.*, 261 Md. 541, 547–48, 276 A.2d 81 (1971)); *see also Giant Food, Inc. v. Washington Coca–Cola Bottling Co.*, 273 Md. 592, 597, 332 A.2d 1 (1975);

*Ramsey v. D.P.A. Assocs.*, 265 Md. 319, 325, 289 A.2d 321 (1972); *Harris v. Otis Elevator Co.*, 92 Md.App. 49, 52, 606 A.2d 305 (1992). Once the tripartite test is met,

[t]he doctrine ... provides a permissible inference of negligence. This means that the inference of negligence to be drawn from the circumstances is left to the jury. They are permitted, but not compelled to find it. As for the plaintiff, the doctrine furnishes sufficient evidence to go to the trier of fact. As for the defendant, the burden of proof is not shifted to him, nor is any burden of introducing evidence cast upon him, except in the very limited sense that if he fails to do so, he runs the risk that the trier of fact may ... find against him.

*Hicks*, 25 Md.App. at 529–30, 337 A.2d 744.

Appellees cite *Beach v. Woodward & Lothrop, Inc.*, 18 Md.App. 645, 308 A.2d 439 (1973), for the proposition that a *res ipsa loquitur* instruction must only be given after the plaintiff proves each of the three elements by a preponderance of the evidence. *Beach*, however, does not support Appellees' formulation of the law.

The Restatement (Second) of Torts § 328D (1964) provides in pertinent part:

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

Comment e to § 328D adds:

It is enough that the facts proved reasonably permit the conclusion that negligence is the more probable explanation. *This conclusion is not for the court to draw, or to refuse to draw, in any case where either conclusion is reasonable;* and even though the court would not itself find negligence, it must still leave the question to the jury if reasonable men might do so.

(Emphasis added). Accordingly, the trial court must instruct the jury on *res ipsa loquitur* if it believes the jury, after considering the evidence, or making rational inferences therefrom, *could reasonably find* that the plaintiff proved each element by a preponderance of the evidence. *See Fields v. Morgan,* 39 Md.App. 82, 83, 382 A.2d 1099 (1978) (discussed in Section III(A)(3), *infra*); *Beach,* 18 Md.App. at 649–50, 308 A.2d 439 ("Whether a jury would accept appellant's testimony as credible . . . is a question for the jury, not the courts, to decide.").

 Before we turn to each of the three elements, it is important to address first an issue not raised by the parties. At trial, Swann introduced specific evidence of Dover's (i.e., Bothell's) negligence: 1) its failure to replace the 14 and 15 contacts; 2) its failure to spend adequate time maintaining the elevator; 3) its failure to stock an adequate supply of spare parts in Prudential's building; and, 4) its failure to use a preventive maintenance checklist. This raises the question of whether a plaintiff, who makes out a *prima facie* case of negligence based on evidence of specific acts of negligence, may rely on the doctrine of *res ipsa loquitur* and have the jury instructed on both negligence and *res ipsa loquitur.*

In earlier cases, the Court of Appeals held that "if there is direct evidence of negligence, and all the facts causing the injury are known and testified to by witnesses at the trial," *Frenkil v. Johnson,* 175 Md. 592, 605, 3 A.2d 479 (1939), "there is no basis for the application of [*res ipsa loquitur*]," *Armour & Co. v. Leasure,* 177 Md. 393, 411, 9 A.2d 572 (1939). *See also Smith v. Baltimore Transit Co.,* 214 Md. 560, 566, 136 A.2d 386 (1957), and cases cited therein; Recent Decision, *Torts—Res Ipsa Loquitur Not Available To Plaintiff Who Attempts to Prove Specific Acts of Negligence,* 22 Md.L.Rev. 174 (1962).

For example, in *Smith v. Bernfeld,* 226 Md. 400, 174 A.2d 53 (1961), the plaintiffs brought suit for personal injuries and medical expenses incurred as the result of a fall from a beauty salon chair. The plaintiffs attempted to establish

defendant's negligence by offering evidence to indicate that the chair was defectively constructed, and that defendant's employees knew of its defective nature, yet failed to bolt the chair to the floor or provide another type of chair which would not tip over. Chief Judge Brune, speaking for the Court of Appeals, stated:

> [W]e think that the plaintiffs' attempt to establish specific grounds of alleged negligence precludes recourse to the doctrine of *res ipsa loquitur. Smith v. Baltimore Transit Co.,* 214 Md. 560, 566, 136 A.2d 386; *Maszczenski v. Myers,* 212 Md. 346, 352, 129 A.2d 109; *Coastal Tank Lines v. Carroll,* 205 Md. 137, 145, 106 A.2d 98, *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 262–263, 96 A.2d 241; *Strasburger v. Vogel,* 103 Md. 85, 63 A. 202. We accordingly hold that the doctrine of *res ipsa loquitur* is not available to the plaintiffs here.

*Id.* 226 Md. at 409, 174 A.2d 53. Seven months later, however, Chief Judge Brune qualified the Court's holding in *Smith.*

> [I]t seems desirable to point out a limitation upon the scope of [the *Smith* ] opinion. In that case all of the facts with regard to the actual happening of the accident had been developed, and when developed, they were held insufficient to establish negligence on the part of the defendant. It was in that context that we said ... that "the plaintiffs' attempt to establish specific grounds of alleged negligence precludes recourse to the doctrine of *res ipsa loquitur.*" Each of the cases cited in support of this statement was a case in which the facts had been similarly disclosed; and the plaintiff's difficulty was that the evidence did not stop at the point of showing the happening of the accident under circumstances in which negligence of the defendant was a permissible inference ..., but went further and showed how the accident happened and so removed the basis for invoking the doctrine....

> On the facts of *Smith v. Bernfeld, supra,* there was no occasion to extend the rule further than the holdings of

the cases cited; and to avoid possible misunderstanding, we now state that the quoted comment was not intended to and should not be treated as extending the rule of those cases. We adhere to the rule as stated by Judge Hammond in the *Coastal Tank Lines* case: "We think that 'the facts and the demands of justice' do not require that an inference be permitted to be drawn as a matter of right where all of the circumstances of the occurrence are shown by the testimony."

*Nalee, Inc. v. Jacobs,* 228 Md. 525, 532–33, 180 A.2d 677 (1962) (citations omitted). If any confusion remained after *Jacobs,* a later case, *Blankenship v. Wagner,* 261 Md. 37, 273 A.2d 412 (1971), made clear that an attempt to prove specific acts of negligence does not necessarily preclude reliance on the doctrine of *res ipsa loquitur.*

In *Blankenship,* the plaintiff, a delivery man, sustained personal injuries while moving a refrigerator into defendant's home. Plaintiff and his co-worker were "bringing [the refrigerator] into the house via the rear steps and a porch which had been built by the [defendant]." *Id.* at 39, 273 A.2d 412. Plaintiff's co-worker fell through one of the steps, and plaintiff "therefore had to hold the refrigerator from above in order to keep it from falling on his co-worker." *Id.* at 40, 273 A.2d 412. As a result, plaintiff injured his back.

At trial, plaintiff "was somewhat intimidated by Judge Sobeloff's comment in *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 263, 96 A.2d 241 (1953), that 'Paradoxically, the plaintiffs proved too much and too little.' Fearful of proving 'too much' he called only the defendant property owner . . . and the plaintiff. . . ." *Id.* 261 Md. at 39, 273 A.2d 412 (footnote omitted). Plaintiff then rested his case, relying on *res ipsa loquitur,* and the trial court granted defendant's motion for a directed verdict.

On appeal, the Court held that this was a proper case for submission to the jury on *res ipsa loquitur,* and stated that plaintiff "might properly have attempted to prove more than he did without weakening his reliance on *res ipsa*

*loquitur." Id.* at 45, 273 A.2d 412. The Court then embarked on a discussion of its earlier cases, including *Smith* and *Jacobs.*

Early in this Court's consideration of *res ipsa loquitur* we held that when a plaintiff relies on the doctrine and its attendant inferences, it must not appear from *the plaintiff's own evidence* that something other than the defendant's negligence caused the accident. This concept was logically extended so that "where all the facts and circumstances are shown by testimony," whether it was introduced by plaintiff *or defendant,* and that evidence shows that the injury might have been caused by something other than the defendant's negligence, *res ipsa loquitur* would not apply, because there would no longer be any need for relying on an inference. In *Smith v. Bernfeld,* Chief Judge Brune, speaking for the Court, stated that the *attempt* by the plaintiffs in that case to prove specific grounds of negligence precluded their relying on the doctrine of *res ipsa loquitur.* However, in *Nalee, Inc. v. Jacobs,* an opinion also written by Chief Judge Brune only 7 months after *Smith v. Bernfeld,* he explained that the attempts by the plaintiffs in *Smith* to establish specific grounds of negligence had precluded their relying on *res ipsa loquitur only* because they had *proved all of the facts* regarding the accident and were unable to show that the defendant's negligence caused the injury. He specifically disavowed any intention in *Smith* of extending the rule of the earlier cases....

If the plaintiff has circumstantial evidence which tends to show the defendant's negligence (and which is therefore *consistent* with the inference relied upon in *res ipsa loquitur) he should not as a matter of policy be discouraged from coming forth with it.* If, however, the evidence introduced by the plaintiff or the defendant shows that everything relative to the case is known, and that the injury might have been caused by something other than defendant's negligence (thereby negating the inference normally relied upon in *res ipsa loquitur),* then

the plaintiff will not be allowed to avail himself of the doctrine. In such a case, if plaintiff's proof fails to make out a *prima facie* case of negligence then it is proper to direct a verdict for the defendant.

*Id.* 261 Md. at 45–46, 273 A.2d 412 (citations omitted) (emphasis added in part).

In light of *Blankenship,* it is clear that Maryland is aligned with the majority of American jurisdictions which hold that "an unsuccessful attempt to prove specific negligence on the defendant's part, or the introduction of evidence of specific negligence not clearly establishing the precise cause of injury, will not deprive the plaintiff of the benefits otherwise available under the doctrine [of *res ipsa loquitur* ]." Annotation, *Evidence of Specific Negligence as Affecting Reliance on Res Ipsa Loquitur,* 33 A.L.R.2d 791, 793 (1954). Therefore,

where the evidence of specific negligence introduced does not purport to furnish a complete explanation of the occurrence, or where there is a dispute at the close of the evidence as to what the precise cause of the accident was, or where reasonable men might differ as to the effect of the evidence before the jury, the plaintiff is not required to prove the specific acts of negligence as alleged, but may rely upon the proof and its reasonable inferences to establish a prima facie case of general negligence.

1 Stuart M. Speiser, *Res Ipsa Loquitur* § 5:19, at 190 (1972).

In the case *sub judice,* Swann attempted to prove that Dover negligently repaired elevator number two on January 7th by cleaning the number 14 and 15 contacts rather than replacing them. Swann also attempted to prove that Dover negligently maintained the elevator. Swann did not, however, purport to furnish a complete explanation of the accident. Indeed, Swann offered evidence establishing that Dover responded to reports of mislevelings on two separate occasions following the January 7th repair. There was no evidence of what, if any, corrective measures Dover took on those dates. It may well be that Dover negligently repaired

the elevator on one, or both, of those occasions and such negligent act or acts caused the February 2nd misleveling incident. Further, at the close of the evidence, there was a dispute as to what caused the accident. Bothell testified that it was proper to clean, rather than replace, the 14 and 15 contacts, and that the door clutch mechanism prevents the elevator doors from opening when the elevator cab is greater than an inch or two from floor level. Therefore, "reasonable men might [have] differ[ed] as to the effect of the evidence before the jury." *See id.*

> [E]ven though the jury could have properly found that the accident was caused by such a specific act of negligence, and was so instructed by the trial court, it has been held that the mere fact that the plaintiff seeks to bolster his case by specific evidence should not compel him to forgo reliance on *res ipsa loquitur,* or to elect between res ipsa and specific negligence, unless the proof adduced by the plaintiff actually refutes or negates the inference which might otherwise be drawn from application of the doctrine.

*Id.* § 5:20, at 193 (citation omitted). In this case, evidence that Dover negligently repaired and maintained elevator number two neither refutes nor negates the inference of negligence supplied by the doctrine of *res ipsa loquitur.* In fact, the evidence, if believed, supports and is consistent with an inference of negligence.

> The evidence of Dover's negligent repair and maintenance may merely support one of the many possible explanations of the accident, known or unknown. If the jury finds that it was the specifically proved act of negligence which occasioned the accident, that is the end of the matter. But, if the jury deems the specific evidence unconvincing, there is no reason whatever why it may not infer that the remaining possible causes, though they be unidentified, still point to the negligence of the defendant.

*Id.* at 194. In other words, specific proof

> may show just how the accident happened and this showing may preclude the likelihood of defendant's negligence

or so reduce it as to leave an insufficient basis in probabilities for an inference of negligence.... Short of this, the fact that a plaintiff offers specific proof should be given no more than its logically probative effect, and this may not eliminate some of the possible explanations of the occurrence.... [The evidence] may, if credited, lead to a finding of specific negligence.... In that case[,] the doctrine of [res ipsa loquitur] is not needed. *But if the proof of that explanation fails (either because it is legally insufficient or because it is not credited), the mere fact that it was offered has no logical tendency to eliminate other explanations involving ... negligence ..., and there is no sound basis for denying application of the doctrine....*

4 Fowler V. Harper, et al., *The Law of Torts* § 19.10, at 67–68 (2d ed. 1986) (emphasis added).

Accordingly, we hold that Swann's attempt to prove specific acts of negligence did not prevent him from requesting that the jury be instructed on both negligence and *res ipsa loquitur.* Our decision is consistent with Maryland law, *see Blankenship,* 261 Md. at 46, 273 A.2d 412; *Unsatisfied Claim & Judgment Fund Bd. v. Bowles,* 25 Md.App. 558, 564, 334 A.2d 532 (1975) (*res ipsa loquitur* applied despite testimony of plaintiff's expert that defendant automobile operator was intoxicated at the time his car ran off the road and struck plaintiff), and the law of other jurisdictions, *see, e.g., Domany v. Otis Elevator Co.,* 369 F.2d 604, 614 (6th Cir.1966) (applying Ohio law), *cert. denied,* 387 U.S. 942, 87 S.Ct. 2073, 18 L.Ed.2d 1327 (1967); *Coffey v. Brodsky,* 165 Ill.App.3d 14, 116 Ill.Dec. 16, 21–22, 518 N.E.2d 638, 643–44 (1987), *cert. denied,* 119 Ill.2d 554, 119 Ill.Dec. 383, 522 N.E.2d 1242 (1988); *Abbott v. Page Airways, Inc.,* 23 N.Y.2d 502, 297 N.Y.S.2d 713, 719–20, 245 N.E.2d 388, 393–94 (1969); *Burgess v. Otis Elevator Co.,* 114 A.D.2d 784, 495 N.Y.S.2d 376, 378 (1985), *aff'd,* 69 N.Y.2d 623, 511 N.Y.S.2d 227, 503 N.E.2d 692 (1986); *Weeden v. Armor Elevator Co.,* 97 A.D.2d 197, 468 N.Y.S.2d 898, 901–02 (1983); *see also* Annotation, *Evidence of Specific Negli-*

*gence as Affecting Reliance on Res Ipsa Loquitur*, 33 A.L.R.2d 791 (1954); Restatement (Second) of Torts § 328D, cmt. m (1963) ("The view which now tends to prevail is that res ipsa loquitur may still be applied, to the extent that the inference to be drawn supports the specific allegation or the specific proof...").

As one court observed, rather than being penalized for going forward and making as specific a case of negligence as possible, a plaintiff entitled to the benefits of res ipsa loquitur should be encouraged to prove as much as possible, there being no reason why such proof should wholly dispel the inference any more than it would in any other case, since the end result is not injurious to the defendant. On the contrary, he is in a better position in so far as he has specific evidence to meet before the trier of fact that may be helpful to him, and the case should go to such trier with the general inference of negligence plus other evidence of specific facts to be weighed against the defendant's showing....

Speiser, *supra*, § 5:20, at 194–95.

### (1)

■■ The first element in *Hicks'* three-part test is whether Swann's "casualty [was] of a sort which usually does not occur in the absence of negligence." Appellees do not dispute that this criterion was satisfied. We are likewise satisfied that a reasonable jury could rationally infer that an elevator does not ordinarily mislevel in the absence of someone's negligence. *See Beach*, 18 Md.App. at 649, 308 A.2d 439 ("It is a rational inference that escalators do not ordinarily stop, then start up with a jerk, without negligence."); *Bigio v. Otis Elevator Co.*, 175 A.D.2d 823, 573 N.Y.S.2d 196, 197 (1991) ("it was reasonable for the jury to conclude that the misleveling of the elevator was not the kind of event to occur in the absence of negligence"); *Burgess*, 495 N.Y.S.2d at 379 ("misleveling of elevator ... was an event of a kind which would not ordinarily occur in the absence of negligence"); *Weeden*, 468 N.Y.S.2d at 904

("overshooting and off-leveling" of elevator would not ordinarily occur had defendant exercised due care); *see also Ruiz v. Otis Elevator,* 146 Ariz. 98, 703 P.2d 1247, 1250 (Ct.App.1985) (whether an elevator malfunction would ordinarily not occur absent someone's negligence is a jury question in borderline cases). Appellees, however, take issue with the second and third elements of the *Hicks* test.

### (2)

Appellees argue that Swann's alleged injuries were not "caused by an instrumentality within the [Appellees'] exclusive control." Appellees contend the elevator was not within the exclusive control of Appellees because IBM was the only tenant in the building, and IBM was not named as a defendant. They reason that IBM, as sole tenant of the premises, shared control over the elevators which negates the element of Appellees' exclusive control. In light of the fact that Swann only preserved the issue of whether a *res ipsa loquitur* instruction was appropriate as against Dover, we do not consider whether Appellees had joint exclusive control over the elevator. We shall only address whether Dover had "exclusive control."

We recently addressed the element of exclusive control in *Harris v. Otis Elevator Co.,* 92 Md.App. 49, 606 A.2d 305 (1992). In *Harris,* the plaintiff was injured when she alighted from an elevator which had misleveled three to six inches below floor level. At the time of the accident, the elevator was being used to carry passengers. At other times, however, the elevator had been used to carry freight. The plaintiff testified that:

> "**A:** [Persons using the elevator for freight purposes] would load it, they would bang it against the top of the elevator, if they could not fit a piece into the elevator, they would shove it in. I have seen where doors have been jammed open, and tried to—the furniture being moved out, if they have not been able to get it around the corner, it—that is what I would interpret as being mishandled.

**Q:** Did you see them putting things in front of the door so they would not shut, so they are kind of banging open and banging open?

**A:** Yes."

*Id.* at 54, 606 A.2d 305. The trial court granted the defendant's motion for judgment because "the use and operation of the elevator by other tenants precluded a finding that [the elevator repair company] possessed exclusive control of the elevator." *Id.* at 51, 606 A.2d 305.

We held that the elevator repair company was not in exclusive control of the elevator. In doing so, we relied on *Smith v. Kelly,* 246 Md. 640, 229 A.2d 79 (1967). In *Smith,* the plaintiff, a patron of defendant's laundromat, was injured when a piece of a drum of an extractor broke off and was flung from the drum which contained a spinner basket revolving at 1750 r.p.m. The trial court directed a verdict for the defendants. After summarizing the conditions required for the application of *res ipsa loquitur,* the Court of Appeals determined that it was not applicable to the facts of the case. The Court noted that:

> The extractor located on appellees' premises was in constant use for various periods of time by members of the public who had exclusive possession and control over it while it was in use. The doctrine of *res ipsa loquitur* is not available in the case since the machine was not in the sole control of appellees.

*Id.* at 644, 229 A.2d 79; *see also Ramsey,* 265 Md. at 326, 289 A.2d 321 (1972) ("A glass door through which occupants of an apartment house and their guests constantly pass and repass is not under such exclusive control of the landlord as to permit invocation of the *res ipsa* doctrine."), *overruled on other grounds by B & K Rentals and Sales Co. v. Universal Leaf Tobacco Co.,* 324 Md. 147, 596 A.2d 640 (1991); *Dorsey v. General Elevator Co.,* 241 Md. 99, 107, 215 A.2d 757 (1966) (elevator service company did not have control of elevator because it was manually operated); *Burkowske v. Church Hosp. Corp.,* 50 Md.App. 515, 523, 439 A.2d 40 (defendant hospital did not have exclusive posses-

sion and control over a bench that collapsed for unknown reasons), *cert. denied*, 293 Md. 331 (1982). In *Lee v. Housing Auth.*, 203 Md. 453, 462, 101 A.2d 832 (1954), the Court of Appeals observed:

> The element of control has an important bearing as negativing the hypothesis of an intervening cause beyond the defendant's control, and also as tending to show affirmatively that the cause was one within the power of the defendant to prevent by the exercise of care. Thus it has been held that the inference is not permissible where the plaintiffs' testimony tends to show an exculpatory cause, or where the lapse of time and the opportunity for interference by others weakens the probability that the injury is attributable to the defendant's act or omission.

(Citation omitted).

In *Harris*, there was substantial evidence that the elevator was subject to abuse and mishandling. Likewise in *Smith*, the washing machine was constantly used, and perhaps abused, by patrons. In the case *sub judice*, however, the jury could have found that there was no such exculpatory cause and that others had no opportunity to interfere with the elevator's mechanical components.

> The logical basis for [the exclusive control] requirement is simply that it must appear that the negligence of which the thing speaks is probably that of defendant and not of another.

> * * * * * *

> The fallacy of the "exclusive control" test is seen in many situations where the doctrine [of *res ipsa loquitur*] is unhesitatingly applied despite absence of "control." Where for instance the defendant's duty of care with respect to the injuring agency is (as to the plaintiff) nondelegable, the fact that control may have been in an independent contractor will not preclude the application of the doctrine. And there are many situations where "it is clear that 'control' is simply the wrong word." Where a fuse misfires, or a bottle explodes, the inference of negligence may still point to the manufacturer or bottler

if the proof eliminates the probability of other causes, even though the mishap occurs at a time and place remote from defendant's control.

Harper, *supra*, § 19.7 (2d ed. 1986) (footnotes omitted); *see also Leikach*, 261 Md. at 548, 276 A.2d 81.

The majority of states considering the exclusive control issue under facts similar to those *sub judice* have concluded that an elevator maintenance company is in exclusive control of an elevator it services. In *Burgess v. Otis Elevator Co.*, 114 A.D.2d 784, 495 N.Y.S.2d 376 (1985), *aff'd*, 69 N.Y.2d 623, 511 N.Y.S.2d 227, 503 N.E.2d 692 (1986), the plaintiff tripped while exiting an elevator that had misleveled by two to five inches above floor level. The defendant elevator company had a service contract with the building owner "whereunder it was obligated to maintain the elevators in proper and safe operating condition, systematically inspect them, and repair any defective parts." *Id.* 495 N.Y.S.2d at 378. The trial court instructed the jury on negligence and *res ipsa loquitur*, and the jury returned a plaintiff's verdict. Defendant appealed and challenged, in part, the propriety of the *res ipsa loquitur* instruction.

The New York Supreme Court, Appellate Division, held that the *res ipsa loquitur* instruction was appropriate given the fact that plaintiff adduced sufficient evidence of the three elements necessary to invoke the doctrine. The Court acknowledged that the second element, "exclusive control of the instrumentality, [was] shown, given [the building owner's] reliance upon defendant's expertise to inspect and maintain the intricate devices of the elevator in reasonably safe operating condition, pursuant to the service agreement." *Id.* 495 N.Y.S.2d at 380. In doing so, the Court quoted a passage from an earlier case, *Weeden v. Armor Elevator Co.*, 97 A.D.2d 197, 468 N.Y.S.2d 898 (1983).

" 'Exclusivity' is a relative term, not an absolute. The logical basis for [the control] requirement is simply that it must appear that the negligence of which the thing speaks is probably that of defendant and not of another.'

(2 Harper and James, [The Law of Torts], § 19.7, p. 1085."

495 N.Y.S.2d at 380 (alterations in original).

In *Weeden*, the plaintiff was injured when an elevator in which she was riding " 'passed the third floor and went to the top ...[,] hit something ...[,] shook ..., and went down to the third floor and ... bounced back up again.' " 468 N.Y.S.2d at 899. The plaintiff filed an action against the defendant elevator company, "the manufacturer and sole maintenance company under contract with the [building owner] to service [the elevator]." *Id.* 468 N.Y.S.2d at 900. The trial court refused to instruct the jury on *res ipsa loquitur,* and the jury returned a defendant's verdict. The appellate court reversed. In addressing the exclusive control element, the Court recognized

> that all general maintenance and repair work on the operating mechanism of [the elevator] was performed solely by [defendant] pursuant to its service contract with the [building owner]. The latter's "mechanical responsibilities" merely comprised the changing of fuses where necessary ..., presumably, general housekeeping and cleaning of the visible interior and exterior portions of the cab, and the shutting off of power to any cab exhibiting a mechanical problem. In sum, the [building owner] relied upon [defendant], as an expert in elevator maintenance, to locate and remedy any defects, and in such capacity, [defendant] had exclusive control of the inspection and maintenance of [the elevator].

*Id.* 468 N.Y.S.2d at 904; *see also Bigio,* 573 N.Y.S.2d at 197 (*res ipsa loquitur* instruction appropriate in an elevator misleveling accident).

The Supreme Court of Nevada addressed the issue of exclusive control in *American Elevator Co. v. Briscoe,* 93 Nev. 665, 572 P.2d 534 (1977). The Court in *Briscoe* held that an elevator maintenance company that had an exclusive contract to maintain and repair an elevator had exclusive control of the elevator. The Court found that the plaintiff

presented facts to the jury which would indicate that some negligent maintenance had occurred. The ... incident was not an isolated phenomenon. Evidence was adduced through several [building] employees which showed anomalies in the elevator's operation on many occasions prior to the ... accident.

\* \* \* \* \* \*

To require a plaintiff to establish exclusive control in the defendant with respect to *any possible cause* of the accident before permitting the application of *res ipsa loquitur* would *emasculate the doctrine.* He was required, *as was done,* only to produce sufficient evidence from which it could be said that it was more likely than not that it was negligence on the part of his adversary.

*Id.* 572 P.2d at 537 (emphasis added in part).

In addition to New York and Nevada, Florida and Pennsylvania appear to take a similar stand. *See Commercial Union Ins. Co. v. Street,* 327 So.2d 113 (Fla.Dist.Ct.App. 1976); *Johnson v. Otis Elevator Co.,* 225 Pa.Super. 500, 311 A.2d 656 (1973). Other states have addressed the issue, but have concluded that a *res ipsa loquitur* instruction was inappropriate. The facts in those cases, however, can be distinguished from the facts *sub judice.*

For example, in *Bias v. Montgomery Elevator Co.,* 216 Kan. 341, 532 P.2d 1053 (1975), a "falling elevator" case, the Supreme Court of Kansas held that the case was inappropriate for submission to the jury on *res ipsa loquitur.* The Court observed that

[t]he operation of the automatic elevator ... involved highly complex electrical and mechanical equipment *which was designed, manufactured and installed by a company other than defendant.* The responsibility of a maintenance company does not extend to manufacturing defects, but is limited to liability for negligence in the performance of its duties. The defendant company had no control over any design defects, mistakes in installation, or any possible faulty construction of the elevator

shaft. These are all possible causes of the accident which would not have been subject to the control of defendant. *Id.* 532 P.2d at 1057–58 (emphasis added) (citation omitted). The Court of Appeals of Washington likewise concluded that the trial court properly refused an instruction on *res ipsa loquitur* in *Murphy v. Montgomery Elevator Co.*, 65 Wash.App. 112, 828 P.2d 584 (1992). In that case, the plaintiff was injured when the elevator she was stepping out of dropped two to four inches below floor level. The defendant elevator repair company was under contract to maintain and repair the elevator. The building owner's director of engineering, however, "periodically inspect[ed the defendant's] work, look[ed] at the elevator and elevator rooms to insure they were in proper order, and occasionally watch[ed the defendant] service the elevators." *Id.* 828 P.2d at 586. "[I]f a part needed replacement [the repairman] would go to [the building owner] for authorization...." *Id.* The Court reasoned that "[b]ecause [the building owner] retained some control over the elevators, and because its contract with [defendant] was only a limited service contract, [defendant] did not have exclusive control of the elevators." *Id.*

Other states have considered the exclusive control element in cases with facts materially different from those *sub judice* and have concluded that *res ipsa loquitur* was inapplicable. *See, e.g., Stines v. Otis Elevator Co.*, 104 Ill.App.3d 608, 60 Ill.Dec. 399, 401, 432 N.E.2d 1298, 1300 (1982) (no evidence that elevator repair company was in control of elevator at time of accident); *Pedersen v. White–Evans Elevator Co.*, 511 N.E.2d 460, 464 (Ind.Ct.App.1987) (no evidence that defendant's negligence caused elevator "overshooting"; furthermore, there was evidence suggesting that the malfunction was caused by the lack of a proper amount of voltage to the elevator—the power supply was in the building owner's exclusive control, not the elevator repair company's); *Hillas v. Westinghouse Elec. Corp.*, 120 N.J.Super. 105, 293 A.2d 419, 424 (element of exclusive control negated where the elevator, although automatically

operated, can be stopped by opening its inner gate at a distance of five or seven inches below the landing sill), *cert. denied,* 62 N.J. 82, 299 A.2d 80 (1972); *Parise v. Otis Elevator Co.,* 100 Ohio App. 200, 136 N.E.2d 113, 116–17 (1954) (some repairs to the elevator were made by the building owner's maintenance department, and the building owner's employees tampered with and abused the elevator); *Seay v. General Elevator Co.,* 522 P.2d 1022, 1027 (Okla. 1974) (defendant elevator repair company not in exclusive control of elevator where plaintiff was "acquainted with the door opening qualities of the elevator ..., had been squeezed by them or other similar doors in that bank of elevators, knew that the doors could be held open by placing a hand upon them, had seen this done during her frequent use of the elevators, and yet did not employ the means at hand to control the door prior and during her exit"); *Bronz v. St. Jude's Hosp. Clinic,* 184 W.Va. 594, 402 S.E.2d 263, 267–68 (1991) (where three parties—the elevator owner, the elevator designer and installer, and the elevator maintenance company—each could be deemed to have some control over the elevator, and the plaintiff failed to establish that the latter, under its maintenance contract, was probably responsible for the accident).

We are aware of three states—Louisiana, North Carolina, and Ohio—that view the exclusive control element in a more narrow fashion and, if presented with a case with facts identical to those *sub judice,* would likely conclude that the exclusive control element was not satisfied. *See Brown v. Otis Elevator Co.,* 535 So.2d 525, 527 (La.Ct.App.1988); *Hester v. Montgomery Elevator Co.,* 392 So.2d 155, 156 (La.Ct.App.1980); *Bryan v. Otis Elevator Co.,* 2 N.C.App. 593, 163 S.E.2d 534, 536–37 (1968); *Norman v. Thomas Emery's Sons, Inc.,* 7 Ohio App.2d 41, 36 O.O.2d 95, 218 N.E.2d 480, 482 (1966).

We find the reasoning of the New York, Nevada, Florida and Pennsylvania courts to be most persuasive. Accordingly, we are satisfied that based on the evidence adduced at

trial, the jury could have reasonably concluded that Dover had exclusive control of elevator number two.

> [E]vidence of complete control is not required. It may be established by evidence sufficient to warrant an inference of its existence, and circumstantial evidence may suffice. The plaintiff is not required in his proof to exclude remotely possible causes and reduce the question of control to a scientific certainty.

*Leidenfrost v. Atlantic Masonry, Inc.*, 235 Md. 244, 250, 201 A.2d 336 (1964). Although the Agreement purported to place "possession or control" of the elevator with CW, we hold that the contract's language is not controlling. *See Street*, 327 So.2d at 114 ("Res ipsa loquitur is applicable where, as here, the defendant manufactures, installs, and maintains an automatic passenger elevator even though the maintenance contract purports to place control or possession in the building owner."). "The crucial point is the actual control of the elevator system...." *Id. But see Bryan*, 163 S.E.2d at 537 (contractual provision controls).

Dover manufactured, installed, and was under a continuing contractual obligation to maintain and repair elevator number two. CW was obligated to prohibit others from making repairs or adjustments to the elevator. There was absolutely no evidence indicating that Prudential, CW, or IBM attempted to repair the elevator. At most, CW's building engineer would turn the elevator off when IBM notified him of a mechanical failure. "In sum, [CW and Prudential] relied upon [Dover], as an expert in elevator maintenance, to locate and remedy any defects, and in such capacity, [the jury could have reasonably inferred that Dover] had exclusive control of the inspection and maintenance of [elevator number two]." *See Weeden*, 468 N.Y.S.2d at 904.

Furthermore, there was no evidence suggesting that the elevator was tampered with, altered in any way, or subjected to abuse. The elevator was used in an office building, presumably in its intended manner. *Cf. Harris*, 92 Md.App. at 54, 606 A.2d 305; *Parise*, 136 N.E.2d at 116–17. During

a six week period preceding the incident, Dover was notified four times of misleveling problems with the elevator. Repairs were made to the elevator, and according to Moynihan, cleaning, rather than replacing, the 14 and 15 contacts caused the misleveling incident. "To require [Swann] to establish exclusive control in [Dover] with respect to *any possible cause* of the accident before permitting the application of *res ipsa loquitur* would *emasculate the doctrine.* He was required, *as was done,* only to produce sufficient evidence from which it could be said that it was more likely than not that it was negligence on the part of [Dover]." *See Briscoe,* 572 P.2d at 537. The trial court should have left the question of exclusive control for the jury which could have reasonably inferred from the evidence that only Dover's negligence caused the accident.

### (3)

We now turn to the last element of *res ipsa loquitur:* "under circumstances indicating that the casualty did not result from the act or omission of the plaintiff." Appellees maintain that Swann's negligence contributed to the accident. We addressed this issue in *Fields v. Morgan,* 39 Md.App. 82, 382 A.2d 1099 (1978).

In *Fields,* the plaintiff brought suit against the driver of a car in which he was riding after he sustained personal injuries when the car crashed into a tree.

During the trial [plaintiff], through the testimony of a police officer, introduced a statement made by [the driver] to the effect that after striking the pedestrian he wanted to stop but [plaintiff] insisted he continue. According to the statement the two men "drove off Powder Mill Road until they got to a government road and started fighting over the steering wheel; went into a spin and they struck a tree." The statement was contradicted by [plaintiff] who testified that when [the driver] swerved and hit the pedestrian, he struck his head on the steering wheel and did not remember another thing until he woke up in the hospital some time later.

*Id.* at 84, 382 A.2d 1099. At the close of plaintiff's case, the trial court ruled that *res ipsa loquitur* was inapplicable and granted the driver's motion for a directed verdict. We held that the doctrine was applicable and remanded the case for a new trial.

> There was direct evidence that [the driver and appellant] were fighting over the steering wheel at the time of the accident but there was also direct evidence that [appellant] was unconscious and could not have engaged in a fight. Under these circumstances, the trial judge should not have granted the motion for a directed verdict as the resolution of the conflicting testimony was for the jury.

*Id.* at 88, 382 A.2d 1099; *see also Bavis v. Fonte,* 241 Md. 123, 215 A.2d 739 (1966); *Powell v. Moore,* 228 Or. 255, 364 P.2d 1094, 1100 (1961) (en banc) ("And even where there is some evidence that plaintiff's failure to exercise care in the use of defendant's equipment was a contributing cause producing the injury, the doctrine is not excluded as a matter of law; rather the case is to be submitted to the jury with proper instructions permitting the jury to draw the inference of defendant's negligence if it finds that plaintiff by his own conduct was not responsible for causing his injury.")

In the case *sub judice,* Swann testified that he looked into the elevator before entering, saw no exiting passengers, and entered without realizing the elevator had misleveled. The elevator had misleveled by twelve to eighteen inches, placing the distance between the floor and the roof of the elevator at five feet, six inches to six feet. Swann's human factors expert testified that it was possible an individual would not notice that an elevator misleveled under these circumstances.

The trial court sent the issue of Appellees' negligence to the jury. The court also instructed the jury on contributory negligence. Obviously, the court believed there was a factual dispute as to both Appellees' *and Swann's* negligence. Although we do not know, it may very well be that the jury found Swann was contributorily negligent. Never-

theless, the jury *could have reasonably found* Swann proved all three elements of *res ipsa loquitur* by a preponderance of the evidence, and therefore, the trial court erred in not instructing the jury as requested. By refusing to give a *res ipsa loquitur* instruction, the trial court substituted its own judgment for that of the jury. A new trial is ordered, but only as to Dover.

The dissent is concerned with two aspects of the majority opinion. First, the dissent points to the fact that Swann "marshalled evidence to show the precise cause of the misleveling—the malfunction of the contacts—and to show as well that Dover was negligent in not replacing those contacts prior to the accident." The dissent concludes that "[w]hen the plaintiff's case is so built around a specific, articulated cause of the event and endeavors to show that that cause arose solely because of specific negligence on the defendant's part," he should not be able to "avail himself of an inference that the event arose from some *other* cause, also engendered by the defendant's negligence" (emphasis in original). The dissent is concerned that this would allow a plaintiff to rely on *res ipsa loquitur* in every negligence case.

■ First, a plaintiff is entitled to a *res ipsa loquitur* instruction only when *Hicks'* tripartite test is satisfied. Only a minority of negligence cases call for such an instruction. Therefore, in that respect, the dissent's concern is unwarranted.

Second, by introducing specific evidence that the failure to replace the contacts on January 7th caused the misleveling, Swann did not purport to furnish a complete explanation of the accident. There were other unknowns. For example, Swann introduced evidence that Dover responded to two separate reports of mislevelings subsequent to the January 7th repair. Not in evidence was what, if any, corrective measures Dover took on those occasions. The jury was free to accept or reject Swann's expert testimony regarding the January 7th repair. If the jury believed that

cleaning, rather than replacing, the contact was proper, or that the alleged defective contact did not cause the misleveling, Swann should not, as a matter of policy, be precluded from relying on an inference of negligence.

 The dissent's "second concern is with the notion that elevators don't mislevel absent someone's negligence." The dissent suggests that "[m]echanical, electrical, and electronic devices fail or malfunction routinely [due to] [a] speck of dust, a change in temperature, misuse, [or] an accidental unforeseen trauma." It may be true that mechanical, electrical, and electronic devices fail due to non-negligent causes. The dissent, however, confuses probabilism with absolutism.

The first element of *Hicks* requires only that the "casualty [was] of a sort which *usually* does not occur in the absence of negligence." *Hicks*, 25 Md.App. at 516, 337 A.2d 744 (emphasis added).

> [T]he majority of cases hold that a plaintiff to come within the res ipsa loquitur doctrine need not show such a state of facts surrounding the accident as excludes any reasonable hypothesis except defendant's negligence. If the attendant facts raise a reasonable inference of defendant's negligence, they need not also exclude every other inference. Plaintiff under this view is not required to exclude or negative all other possible causes of the accident except that of defendant's negligence, but need only demonstrate a "balance of probabilities" pointing to the defendant's negligence as a cause of the accident.

Speiser, *supra*, § 2:5, at 41–42 (footnotes omitted). Consequently, *res ipsa loquitur*

> has been applied to a wide variety of situations, and its range is as broad as the possible events which reasonably justify such a conclusion. It finds common application, for example, in the case of objects such as bricks or window panes falling from the defendant's premises, *falling elevators*, the collapse of structures, live stock loose on the highway, the escape of gas or water from

mains, or of electricity from wires or appliances, the explosion of boilers or other objects under the defendant's control, or the escape of dust or noxious gases from his premises, the sudden starting of machinery, the detachment of wheels from moving vehicles, injuries to passengers from causes within the control of the carrier, such as derailment, the sudden stop of a bus, or its defective equipment, some kinds of automobile accidents, such as a car suddenly leaving the highway and going into a ditch or colliding with a stationary object, or starting down hill not long after it has been parked at the curb, defective food in sealed containers, and many other similar occurrences.

W. Page Keaton et al., *Prosser and Keaton on the Law of Torts* § 39, at 244–45 (5th ed. 1984) (emphasis added) (footnotes omitted).

In *Montgomery Elevator Co. v. Gordon,* 619 P.2d 66 (Colo.1980), the Supreme Court of Colorado considered whether an elevator door closing on a passenger was the kind of event which ordinarily does not occur in the absence of negligence. The Court concluded it was, relying, in great part, on the Restatement (Second) of Torts, which provides:

"The plaintiff need not, however, conclusively exclude all other possible explanations and so prove his case beyond a reasonable doubt.... It is enough that the facts proved reasonably permit the conclusion that negligence is the more probable explanation."

*Id.* at 69 (*quoting* Restatement (Second) of Torts, § 328D cmt. e (1964)); *see also* Keaton, *supra,* § 39, at 248 ("The plaintiff is not required to eliminate with certainty all other possible causes or inferences, which would mean that the plaintiff must prove a civil case beyond a reasonable doubt."). For a misleveling case similar to the one *sub judice,* with expert testimony similar to that presented in the court below, see *Daniels v. Standard Oil Realty Corp.,* 145 Ill.App.3d 363, 99 Ill.Dec. 284, 288, 495 N.E.2d 1019, 1023 (1986), *cert. denied,* where the Court held that "[i]n

the normal course of events, an elevator does not operate as the elevator here did, and when it does, negligence is a more likely cause than other causes."

In the case *sub judice*, the jury could have reasonably concluded that negligence was a more likely cause than other causes. This is all the first element of the *Hicks* test requires. The ultimate determination of negligence is for the jury. Therefore, since this is, at worst, a borderline case, the jury, and not the court, should decide. *See Ruiz v. Otis Elevator*, 146 Ariz. 98, 703 P.2d 1247, 1250 (Ct.App. 1985) (whether an elevator malfunction would ordinarily not occur absent someone's negligence is a jury question in borderline cases).

### (B)

### Missing Evidence

Swann argues that the trial court erred in refusing to instruct the jury regarding alleged missing evidence. According to Swann, Dover failed to produce all of the repair order tickets from the repair calls made between December 1986 and the date of the incident. He claims the failure to retain these documents was in direct conflict with Dover's document retention policy.

Swann did not preserve the issue for our review. Thus, we do not reach the merits of his argument. Although Swann submitted a proposed jury instruction regarding missing evidence, Swann did not object to the trial court's failure to give the instruction to the jury. "No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection." Rule 2–520(e); *Barone v. Winebrenner*, 189 Md. 142, 145, 55 A.2d 505 (1947) ("The purpose, of course, in requiring exceptions to be made to the instructions of the trial judge before the jury retires is to give that judge an opportunity

to correct or add to his instructions matters either first erroneously stated or omitted.").

(C)

Violation of a Statute as Evidence of Negligence

 Swann argues the trial court erred by refusing to instruct the jury that the violation of a statute is evidence of negligence. Swann cites Maryland Annotated Code article 83B, § 6–102 (1991), and asserts that it "authorizes the Maryland Department of Housing and Community [sic] to develop and promulgate appropriate building codes to protect the public when it uses buildings in this State." Swann continues by pointing out that "the Department adopted, and incorporated by reference, the ANSI A117.1 Building Code" which provides:

> Elevator operation shall be automatic. Each car shall be equipped with a self-leveling feature that will automatically bring the car to floor landings within a tolerance of ½ in (13 mm) under rated loading to zero loading conditions. This self-leveling feature shall be automatic and independent of the operating device and shall correct for overtravel or undertravel.

American National Standard Institute, Inc., *American National Standard for Buildings and Facilities—Providing Accessibility and Usability for Physically Handicapped People* § 4.10.2 (1986) (hereinafter "ANSI A117.1"); *see also* COMAR 05.02.02.02(B). Swann contends that since Moynihan testified that the above provision applies in Maryland, and since he is "within the class of people governed [sic] by these provisions," the court erred in failing to instruct the jury as requested. We disagree.

"It is well settled in Maryland that a violation of a building code can be evidence of breach of a duty owed." *Gardenvillage Realty Corp. v. Russo,* 34 Md.App. 25, 30, 366 A.2d 101 (1976). It is equally settled, however, that "[t]he violation of a [code] may furnish evidence of negligence ... only where the person alleging negligence is

within the class of persons sought to be protected, and the harm suffered is of the kind which the [code] was intended, in general, to prevent." *Atlantic Mut. Ins. Co. v. Kenney,* 323 Md. 116, 124, 591 A.2d 507 (1991) (citation omitted). Further, the violation of a code must be a proximate cause of the harm. *Id.* at 127, 591 A.2d 507.

Article 83B, § 6–102(a)(1) of the Annotated Code of Maryland provides: "The Department ... shall promulgate and adopt a State building code for the purpose of developing rules and regulations *for making buildings and facilities accessible and usable by the physically handicapped....*" (emphasis added). In response to § 6–102(a)(1)'s directive, the Department of Housing and Community Development promulgated the "Maryland Building Code for the Handicapped." COMAR 05.02.02. The purpose of the code "is to establish minimum requirements that will provide a reasonable degree of accessibility and usability of buildings and facilities *by the physically handicapped.*" COMAR 05.02.-02.02(A) (emphasis added). Specifically,

> [t]he specifications ... are intended to make buildings and facilities accessible to and usable by people with such *physical disabilities* as the inability to walk, difficulty walking, reliance on walking aids, blindness and visual impairment, deafness and hearing impairment, incoordination, reaching and manipulation disabilities, lack of stamina, difficulty interpreting and reacting to sensory information, and extremes of physical size. *Accessibility and usability allow a physically handicapped person to get to, enter, and use a building or facility.*

ANSI A117.1, § 1.1 (emphasis added).

It is crystal clear that COMAR 05.02.02.02 and ANSI A117.1 are not intended to protect "the public." Rather, the intent of these provisions is to make public buildings accessible and usable by physically handicapped persons. For example, § 4.10.2 allows individuals confined to a wheelchair ready access to elevators by requiring the elevator to have a self-leveling feature that brings the elevator to within ½ inch of floor level. As Appellees point out,

there was no evidence that Swann was physically disabled at the time of the accident. Accordingly, Swann may have incidentally benefited from the code provision, but he was not "within the class of persons sought to be protected." *Kenney,* 323 Md. at 124, 591 A.2d 507.

### (D)
#### Non–Delegability of a Land Owner's Duty

 Last, Swann argues that the trial court erred by refusing to instruct the jury that the duty a land owner owes to a business invitee is non-delegable. Swann notes that CW and Prudential's defense focused on their lack of notice—that Dover did not notify them of any problems and that they relied upon the expertise of Dover for all decisions concerning the care and maintenance of the elevator. According to Swann, Prudential, as a property owner, had a non-delegable duty to correct all unreasonable risks, or to warn invitees of them, if they knew or should have known of such risks.

Appellees contend that the trial court's instructions fairly instructed the jury as to a land owner's duty. Therefore, it was not necessary for the trial court to give Swann's requested instructions.

During the jury instruction phase of trial, the court instructed the jury as follows:

> The plaintiff in this case, Mr. Swann, is what the contemplation of law [sic] is called the invitee. An invitee is a person who is on the property of another for the interest of the owner or occupier of the premises.

> The owner or occupier of premises has a duty to the invitee. The owner/occupier must use ordinary care to see that those portions of the property which the invitee, in this case Mr. Swann reasonably may be expected to use are safe or if not safe to give the invitee reasonable notice of the unsafe condition.

> If the owner/occupier of the premises sets aside a portion of the property for the common use of his tenants

owes [sic] the tenants a duty to exercise ordinary care to keep those portions of the premises in a safe condition or if not safe to notify the tenants of the unsafe condition.

Also further the landlord or occupier who has agreed to make repairs may be responsible for the injuries resulting from his failure to make such repairs.

Swann claims the trial court improperly refused to read to the jury the following two proposed instructions:

The duty of a land owner to a business invitee is a non-delegable duty. That is something of a misnomer, as the owner is free to delegate the duty of performance to another, but the owner cannot thereby avoid or delay its liability for the non-performance of the delegated duties. Where an owner invites a business invitee to come onto its premises, the duty of the owner to the invitee is not changed by the employment of an independent contractor.

A land owner has a duty to keep its property in a safe condition which it holds open to the public. That duty can not be delegated. The land owner is responsible for the condition of the property. The land owner is not responsible merely to supervise the independent contractor that it has hired to maintain the property. Although the property owner may hire someone to perform maintenance on the premises, the land owner cannot avoid or delegate the risk of non-performance of the duty by the person so hired.

We perceive no error.

A party is generally entitled to have its theory of the case presented to the jury if: "(1) the instruction ... correctly state[s] the law, and (2) that law [is] applicable in light of the evidence before the jury." *Pickett*, 285 Md. at 194, 401 A.2d 651. This notwithstanding, however, "[t]here is no obligation that the trial court point out any and all of the reciprocal duties and obligations of the respective parties in minute detail, provided the subject is fully and comprehensively covered in the charge to the jury." *Flohr v. Coleman*, 245 Md. 254, 266, 225 A.2d 868 (1967).

We hold that the instructions given fairly and comprehensively instructed the jury as to the duty a land owner owes an invitee. Swann's requested instructions would have overemphasized Prudential and CW's duty, and would have been unduly suggestive and prejudicial. The trial court did not state that a land owner's duty was delegable; therefore, the jury should not have been under the impression that the duty was delegable.

JUDGMENTS IN FAVOR OF APPELLEES PRUDENTIAL AND CAREY WINSTON AFFIRMED; JUDGMENT IN FAVOR OF APPELLEE DOVER REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ⅔ BY APPELLANT AND ⅓ BY APPELLEE DOVER.

WILNER, Chief Judge, concurring and dissenting.

I concur in the affirmance of the judgments in favor of Prudential and Carey Winston but dissent from the reversal of the judgment in favor of Dover.

I have two concerns with the panel majority's conclusions regarding a *res ipsa loquitur* instruction. First, although I quite agree that, under current Maryland law, the mere offering of evidence of specific negligence does not, of itself, preclude a jury, upon a proper *res ipsa loquitur* instruction, from inferring negligent conduct, it seems to me that the plaintiff really did prove (or attempt to prove) too much for the doctrine to apply in this case. He marshalled evidence to show the precise cause of the misleveling—the malfunction of the contacts—and to show as well that Dover was negligent in not replacing those contacts prior to the accident. The focus of the case was on whether Dover was remiss in merely cleaning the contacts rather than replacing them.

When the plaintiff's case is so built around a specific, articulated cause of the event and endeavors to show that that cause arose solely because of specific negligence on the

defendant's part, I do not believe that the plaintiff, if he fails to persuade the jury that his position has merit, can then avail himself of an inference that the event arose from some *other* cause, also engendered by the defendant's negligence. If that were the case, a *res ipsa loquitur* instruction would be appropriate in *every* negligence case. If that is what Mr. Speiser is selling (Maj. op. pp. 397–98), I don't buy it.

My second concern is with the notion that elevators don't mislevel absent someone's negligence. This Court made a similar kind of bald statement, with respect to escalators, in *Beach v. Woodward & Lothrop, Inc.*, 18 Md.App. 645, at 649, 308 A.2d 439 (1973), offering no authority or rational explanation for the statement. Similar pronouncements have been made by other courts, as mentioned by the panel majority, and so I obviously cannot complain that its conclusion in this regard is without any legal support. My problem is in understanding the rationale for such a doctrine. Mechanical, electrical, and electronic devices fail or malfunction routinely—some more routinely than others. A speck of dust, a change in temperature, misuse, an accidental unforeseen trauma—many things can cause these devices to malfunction. To allow an inference that the malfunction is due to someone's negligence when the precise cause cannot be satisfactorily established appears to me to be unwarranted. The cases cited by the panel majority say it is so, but they don't say *why* it is so—at least not convincingly.