**Keith A. WOOD**

v.

**SUPERINTENDENT OF INSURANCE.**

Supreme Judicial Court of Maine.

Argued Jan. 28, 1994.

Decided March 14, 1994.

---

Donald Marden (orally), Marden, Dubord, Bernier & Stevens, Waterville, for plaintiff.

Jeffrey Frankel (orally), James M. Bowie, Sarah Roberts, Asst. Attys. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN, and DANA, JJ.

DANA, Justice.

Keith Wood appeals from a judgment entered in the Superior Court (Kennebec County, *Mills, J.*) affirming an order of the Superintendent of Insurance disciplining Wood for violating the Maine Insurance Code. Wood contends that the Superintendent lacked jurisdiction to impose sanctions and that his factual findings were clearly erroneous. We affirm the judgment.

Wood applied for a Maine nonresident insurance agent license in 1988. On his application, he responded negatively to the following question: "Has any public official, state department, or court suspended, revoked or refused to renew or refused to issue any insurance ... licenses held or applied for by you?" Contrary to this response, the Oklahoma Commissioner of Insurance had denied Wood's application for a license in 1987.

Wood and his companies had also been the subjects of disciplinary proceedings in seven other states, where they were charged with selling insurance without a license or engaging in unfair, fraudulent or deceptive practices. All of these actions were terminated by consent orders or settlement agreements, which required Wood and his companies to pay fines or attorney fees, comply with applicable insurance laws, and, in some cases, surrender their licenses or agree not to renew them.

On March 14, 1989, the Bureau of Insurance issued Wood a nonresident agent license.[1] On April 24, 1989, two of Wood's companies, Keith Wood Agency, Inc. and Keith Wood Agency of Delaware, Inc., entered into a contract with Paul Richard, a licensed Maine agent. Richard sold health and life insurance for these companies for three years. Although Wood was licensed individually, his agencies were not.

On September 3, 1991, the Bureau notified Wood that all insurers that had appointed Wood as their agent had canceled those appointments. The Bureau further informed Wood that unless he obtained a new appointment within sixty days, he was required to

---

1. According to a later communication from the Bureau, Wood's license had an expiration date of April 1, 1992.

return his license, which he elected to do. Pursuant to 24–A M.R.S.A. § 1532–A(7) (1990), the license was deemed to be "terminated."

On March 31, 1992, the Staff of the Bureau of Insurance filed a petition for disciplinary order, which charged Wood with three violations of the Maine Insurance Code, 24–A M.R.S.A. §§ 1–6407 (1990 & Supp.1993) (the "Code"):

(1) failure to disclose on his Maine application that Oklahoma denied him a license, in violation of 24–A M.R.S.A. § 1518(8) (1990);

(2) failure to maintain a good personal and business reputation, in violation of 24–A M.R.S.A. § 1673 (Supp.1993); and

(3) failure to license his agencies, in violation of 24–A M.R.S.A. §§ 1512 and 1517 (1990).

The Staff sought the revocation of Wood's license, which had previously terminated, and a $2,000 fine.

After a hearing on the petition, the Superintendent concluded that Wood wrongfully withheld information on his application, failed to maintain a good personal and business reputation, and failed to license his agencies. The Superintendent revoked Wood's license and imposed a $2,000 penalty. On Wood's appeal to the Superior Court (Kennebec County, *Mills, J.*) the Superintendent's decision was affirmed, and this timely appeal followed.

## I. *Superintendent's Authority*

■ On this appeal, we review the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *International Paper Co. v. Board of Envtl. Protection,* 629 A.2d 597, 599 (Me.1993). When interpreting statutes, we "seek to discern from the plain language the real purpose of the legislation, avoiding results that are absurd, inconsistent, unreasonable, or illogical." *Id.* at 599–600 (quoting *Mahaney v. State,* 610 A.2d 738, 741 (Me. 1992)). When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive, is entitled to great deference and will be upheld "unless the statute plainly

compels a contrary result." *Abbott v. Commissioner of Inland Fisheries & Wildlife,* 623 A.2d 1273, 1275 (Me.1993).

■ Wood argues that the Superintendent lacked jurisdiction to impose sanctions because Wood surrendered his license before the Staff initiated the disciplinary action. Wood relies on 24–A M.R.S.A. § 1539(1) (1990), which provides that the Superintendent may revoke a license if he finds that, "as to the applicant or licensee," a violation of the Code has occurred. Wood concludes that the Superintendent's disciplinary authority is limited to current applicants or licensees.

The Superintendent contends that section 1539(1) does not limit his disciplinary authority to current applicants or licensees. According to the Superintendent, the Code prohibits persons or entities from committing certain acts while an applicant or licensee. If Wood were to prevail, the Superintendent maintains that "any licensee could evade disciplinary action by simply surrendering his license." Such a result would frustrate the overall purpose of the Code by diminishing the Superintendent's authority to regulate the licensing and conduct of insurance agents. *See* 24–A M.R.S.A. § 1673 (Supp. 1993) ("For the protection of the people of this State, the superintendent may not issue, continue or permit to exist any agent ... license except in compliance with this chapter. . . .").

The Superintendent's argument has support in other jurisdictions. *See, e.g., Senise v. Corcoran,* 146 Misc.2d 598, 552 N.Y.S.2d 483, 484–85 (1989) (State Superintendent of Insurance is not divested of jurisdiction when license is surrendered or expires). *Cf. Golz v. Maine Real Estate Comm'n,* 634 A.2d 1288, 1289 (Me.1993) ("Generally speaking, the disciplinary authority of occupational and professional licensing boards is limited to enforcement against licensees or former licensees."). We need not decide this issue, however, because we find that Wood was still a licensee under the Code when the Staff brought its action.

Wood's license was to expire on April 1, 1992. Perhaps coincidentally, the Staff filed its petition on March 31, 1992, one day before

the expiration date. Although Wood's license had "terminated" pursuant to 24–A M.R.S.A. § 1532–A(7) (1990), it could have been reinstated if Wood obtained a new appointment and filed a new application. *See* 24–A M.R.S.A. §§ 1518, 1532–A(7) (1990 & Supp.1993). Unlike a first-time applicant (or an applicant whose license had indeed expired), Wood would not have been required to take the examination. 24–A M.R.S.A. § 1521 (1990). In effect, his "terminated" license had not yet "expired," but was, as the Superintendent asserted at oral argument, in a "state of hibernation."

■ Wood also argues that the Staff's petition to revoke his license was rendered moot by his earlier surrender. We disagree. Under the statutory scheme, there is clearly a difference between a license that has been terminated and a license that has been revoked. After a termination, which is essentially a ministerial act carried out pursuant to 24–A M.R.S.A. § 1532–A(7), Wood could reinstate his license by obtaining a new appointment and submitting a new application. After a revocation, however, the Superintendent can refuse to issue a new license unless the former licensee "shows good cause why the prior revocation should not be deemed a bar to the issuance of a new license." 24–A M.R.S.A. § 1542(1). Moreover, a person whose license has been revoked twice is not eligible for relicensing. 24–A M.R.S.A. § 1542(2). Therefore, the termination of Wood's license did not render the issue of revocation moot. *See State v. Gleason,* 404 A.2d 573, 578 (Me.1979) (an issue is not moot if "there remain sufficient practical effects flowing from the resolution of [the] litigation to justify the application of limited judicial resources").

■ Wood further argues that because 24–A M.R.S.A. § 1512–A (1990) refers to a "person whose license as an insurance agent … has been … voluntarily surrendered to avoid prosecution," the Legislature clearly recognized that an agent may voluntarily surrender his license to avoid prosecution.

The Superintendent maintains that although section 1512–A allows him to negotiate the surrender of a license as an alternative to revocation, a voluntary surrender outside the context of a disciplinary proceeding does not immunize a licensee from a subsequent disciplinary action. Because the Code does not "plainly [compel] a contrary result," *Abbott,* 623 A.2d at 1275, we uphold the Superintendent's interpretation.

Finally, Wood argues that the $2,000 fine was improper because (1) he was not a licensee when it was imposed and (2) the Superintendent did not prove that he had received the Attorney General's notice of election.[2] Because we conclude that Wood was in fact a licensee, we hold that the Superintendent had the authority to impose a fine against him. Since Wood did not raise the issue of the Attorney General's election during the initial administrative proceeding, he has failed to preserve it for appellate review. *See New England Whitewater Ctr., Inc. v. Department of Inland Fisheries & Wildlife,* 550 A.2d 56, 58 (Me.1988).

## II. *Factual Findings*

■ In reviewing the decisions of an administrative agency, we do not attempt to second-guess the agency on matters falling within its realm of expertise and limit our review to determining whether the agency's conclusions are unreasonable, unjust, or unlawful in light of the record. *Imagineering, Inc. v. Superintendent of Ins.,* 593 A.2d 1050, 1053 (Me.1991). "The agency's factual determinations must be sustained unless shown to be clearly erroneous." *Id.*

### A. *Wood's violation of 24–A M.R.S.A. § 1518 (1990)*

■ Title 24–A M.R.S.A. § 1518(8) provides that "[n]o applicant for license under this chapter shall willfully misrepresent or withhold any fact or information called for in the application form." The Superintendent concluded in his order that Wood violated

---

**2.** Title 24–A M.R.S.A. § 12–A(1) (1990) authorizes the Superintendent to assess a civil penalty of up to $500 against "any person" who violates any provision of the Maine Insurance Code, provided the Attorney General elects not to pursue an action in the Superior Court and notifies the Superintendent of this election.

this section by failing to disclose the Oklahoma license denial.

Wood complains that the Superintendent improperly admitted evidence in reaching his conclusion. Wood correctly asserts that during an administrative proceeding, "[e]vidence shall be admitted if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." *See* 5 M.R.S.A. § 9057(2) (1989). Wood contends that the evidence of the out-of-state proceedings does not satisfy this requirement because (1) the Superintendent did not attempt to determine the sources of information, (2) the evidence with respect to some of the proceedings might not have been "current," and (3) there was no evidence of official action by the Oklahoma Insurance Regulatory Agency. We disagree.

The record contains certified copies of three letters from the Oklahoma Insurance Commissioner's office stating that the license was denied. Based on this evidence, we do not conclude that the Superintendent's finding was clearly erroneous. Moreover, evidence of the Oklahoma license denial was admissible pursuant to 5 M.R.S.A. § 9057(2). *See Goldberg v. Barger,* 37 Cal.App.3d 987, 112 Cal.Rptr. 827, 832 (1974) (admission of out-of-state insurance commissioners' reports of applicant's misconduct was proper because they constituted "the sort of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs").

### B. *Wood's violation of 24–A M.R.S.A. § 1673(3) (Supp.1993)*

■ Title 24–A M.R.S.A. § 1673(3) provides that the Superintendent shall revoke an individual's license if he fails to maintain a "good personal and business reputation." Based on the out-of-state disciplinary proceedings and Wood's misrepresentation on his Maine license application, the Superintendent concluded that Wood violated this section.

Wood contends that the filing of complaints in other jurisdictions cannot support the revocation of a license in Maine for failure to maintain a good reputation. He again contends that the out-of-state regulatory filings were inadmissible pursuant to 5

M.R.S.A. § 9057(2). He argues that the Superintendent erred in considering the basis for the out-of-state consent orders and settlement agreements, and should have instead limited his review to the final actions. According to Wood, the Bureau failed to give full faith and credit to the final actions in violation of the United States Constitution. We disagree.

Wood was subject to disciplinary proceedings in seven states for unfair and deceptive advertising practices, misrepresentation of policy terms, operation without a license, and misrepresentations on a license application. In light of these actions, as well as Wood's misrepresentation on the Maine application, the Superintendent's conclusion that he failed to maintain a good reputation was not clearly erroneous.

In response to Wood's arguments concerning the admissibility of evidence, all of the out-of-state records were certified copies. Although Wood questioned the currency of these records, he declined the opportunity to present documentation of more recent proceedings in those states. We conclude that these records were the kind of evidence on which the Superintendent could rely in protecting the public from dishonest and untrustworthy agents. *See Goldberg,* 112 Cal. Rptr. at 832.

■ Finally, we hold that the Superintendent did not violate the Full Faith and Credit Clause. By examining the out-of-state proceedings, the Superintendent did not upset the final actions taken by those states, nor did his sanctions against Wood infringe their sovereignty. *See LeBlanc v. United Eng'rs & Constructors Inc.,* 584 A.2d 675, 677–78 (Me.1991) (where New Hampshire awarded workers' compensation benefits to Maine resident employees, no violation of the Full Faith and Credit Clause occurred when the Maine Workers' Compensation Commission awarded benefits to the same employees).

### C. *Wood's violation of 24–A M.R.S.A. §§ 1512 and 1517 (1990)*

■ Pursuant to 24–A M.R.S.A. §§ 1512 and 1517, all firms or corporations engaging in insurance activities in Maine must be li-

censed as agents, brokers, adjusters, or consultants. The Superintendent made the following findings: (1) Wood was founder and principal of the Keith Wood agencies and was responsible for their actions and (2) the Keith Wood agencies entered into a contract with Maine resident agent Paul Richard to sell insurance in Maine. Based on these findings, the Superintendent concluded that Wood violated sections 1512 and 1517 by failing to license his agencies.

Wood argues that the Superintendent's conclusion is erroneous because there is no evidence that his agencies solicited insurance in Maine notwithstanding the fact that his agencies entered into a contract with Richard, a licensed Maine agent. The Superintendent counters that two of Wood's agencies entered into a contract with Richard, whose office was located in Augusta, to sell insurance. The agencies paid Richard over $20,-000 in commissions. Accordingly, "the Su-

perintendent could legitimately infer that an agent located in Augusta, Maine would have drawn his business from Maine residents."

Based on the record, the Superintendent's conclusion that Wood's agencies engaged in insurance activities in Maine, that they failed to obtain a license, and that Wood was responsible for this failure, was not clearly erroneous.

The entry is:

Judgment affirmed.

All concurring.