67 F.3d 296
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Suellyn M. MOSER, Plaintiff-Appellant,
v.
AGWAY PETROLEUM CORPORATION, t/a Agway Energy Products;
Miller and Sons, Incorporated, Defendants-Appellees,
v.
Bob Curtis, Third Party Defendant.
 No. 94-2581.
 United States Court of Appeals, Fourth Circuit.
 Sept. 13, 1995.
 
 ARGUED: Samuel Dennis Hill, HILL, JOHNSON, FOLEY, STONE & MILES, Towson, Maryland, for Appellant.
 Pamela Randi Johnson, BUDOW & NOBLE, P.C., Ellicott City, Maryland, for Appellee Miller & Sons; ON BRIEF: Laurie Ann Garey, BUDOW & NOBLE, P.C., Ellicott City, Maryland, for Appellee Miller & Sons;
 Thomas Joseph Cullen, Jr., GOODELL, DEVRIES, LEECH & GRAY, Baltimore, Maryland, for Appellee Agway Petroleum. David H. Hollander, Jr., GOODELL, DEVRIES, LEECH & GRAY, Baltimore, Maryland, for Appellee Agway Petroleum.
 Before MURNAGHAN, Circuit Judge, BUTZNER and PHILLIPS, Senior Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Suellyn Moser, an employee of a Maryland horse farm, brought this tort suit to recover for injuries she sustained when an oil-fired space heater exploded in her employer's horse barn. The district court granted summary judgment for both defendants on the grounds that Moser had produced no direct evidence of negligence and did not satisfy the preconditions necessary to reach the jury under the doctrine of res ipsa loquitur. We affirm.
 
 I.
 
 2
 In March 1991, Moser's employer contracted with Agway Petroleum Corporation for Agway to become the oil supplier and heating maintenance contractor for the farm. Agway engaged Miller & Sons, Inc., to perform the maintenance work on the farm's heaters. In the fall of that year, following an inspection of the heaters, Herbert Miller of Miller & Sons decommissioned one 20-year-old Resnor-brand heater because it had a crack in its fire box ("the Heater"). Sometime thereafter, Robert Curtis, an employee of the horse farm, repaired the Heater and put it back in service. The Heater was in operation throughout the winter but required periodic servicing by Mr. Miller because it had a tendency to become clogged with hay dust and shut off.
 
 
 3
 On March 12, 1992, apparently in response to a service call, Mr. Miller cleaned out accumulated straw and hay dust from the Heater and replaced its nozzle. There is evidence that he returned to complete the work on March 14. In the early morning hours of March 16, the Heater exploded, injuring Moser who was working nearby.
 
 
 4
 Moser brought suit in Maryland state court against Agway, which removed the case to federal district court on the basis of diversity of citizenship. Agway brought in Miller as a third party defendant, and Moser amended her complaint to include Miller as a defendant. After extensive discovery, both defendants moved for summary judgment on the ground that Moser had presented no evidence of Miller's negligence.* Moser opposed. The district court granted defendants' motions without an oral hearing. The court explained that Moser had presented no direct evidence that Miller was negligent and could not rely on the doctrine of res ipsa loquitur for two independently sufficient reasons: (1) a jury could not reasonably conclude that the explosion of an old oil heater is the type of occurrence that does not ordinarily occur absent negligence; and (2) the oil heater was not in the exclusive control of the defendants.
 
 
 5
 Moser filed a timely notice of appeal.
 
 II.
 
 6
 In this diversity case, we apply Maryland law in reviewing de novo the district court's grant of summary judgment. Helm v. Western Maryland Ry. Co., 838 F.2d 729, 734 (4th Cir.1988).
 
 
 7
 Under Maryland law, a plaintiff cannot both present direct evidence of a defendant's negligence and seek to rely on the doctrine of res ipsa loquitur. Dover Elevator Co. v. Swann, 638 A.2d 72, 765-70 (Md.1994) (reversing Swann v. Prudential Ins. Co., 620 A.2d 989 (Md.Ct.App.1993)). In any event, Moser did not try to present any direct evidence of negligence below--say, by offering expert reconstruction of the exploded heater--and concedes on appeal that dismissal of her suit was in error only if the record on summary judgment revealed that she would have been entitled to reach the jury on res ipsa loquitur.
 
 Res ipsa loquitur contains three elements:
 
 8
 1. A casualty of a sort which usually does not occur in the absence of negligence.
 
 
 9
 2. Caused by an instrumentality within the defendant's exclusive control.
 
 
 10
 3. Under circumstances indicating that the casualty did not result from the act or omission of the plaintiff.
 
 
 11
 Dover, 638 A.2d at 765 (internal quotations omitted). A plaintiff can reach the jury under the doctrine only if a reasonable jury could find that the plaintiff proved each of the three elements by a preponderance of the evidence. Swann, 620 A.2d at 1001.
 
 
 12
 As noted, the district court granted summary judgment for the defendants after determining from the record before it that a jury could not find for Moser on either of the first two components. First, the court explained that "there is insufficient warrant in the case of an exploding--and often repaired--old heater for a reasonable jury rationally to infer that explosions of such devices do not usually occur in the absence of negligence." Second, the court identified two considerations--uncontroverted evidence that an employee of the horse farm, Robert Curtis, had repaired the Heater; and the defendants' suggestions that the explosion may have been caused by the repeated pressing of the Heater's reset button by farm employees--in support of its conclusion that Moser could not show exclusive control. We believe that, under Maryland law, the district court was correct on both counts.
 
 A.
 
 13
 With regard to the first element, Moser takes issue with the district court's characterization of the Heater as "often repaired." She contends that the only repair mentioned in the record was that by Robert Curtis in the fall of 1991. Unfortunately for Moser, that qualification does not significantly change the analysis. The Maryland Supreme Court's opinion in Dover suggests that Moser could not make out the first res ipsa element without presenting some expert testimony to the effect that oil heaters of the sort at issue do not ordinarily explode absent negligence (as she did not).
 
 
 14
 Swann, the plaintiff in Dover, was injured when he entered a "mislevelled" elevator--one that descended approximately one foot below floor level. Swann presented expert testimony regarding the specific act of mis-maintenance by the defendant that, he contended, caused the misalignment. He also sought to rely on res ipsa loquitur. After the trial court refused to instruct it on res ipsa, the jury returned a judgment for the defendants. A divided panel of the Maryland Court of Special Appeals reversed and remanded. Concluding that Swann's evidence could have satisfied all three elements of the doctrine, the majority held that Swann was entitled to have the jury instructed on res ipsa loquitur. Chief Judge Wilner dissented on two grounds. First, he contended that a plaintiff who produces evidence regarding the alleged specific negligence of the defendant is thereby precluded from relying on res ipsa. Second, he disagreed
 
 
 15
 with the notion that elevators don't mislevel absent someone's negligence.... Similar pronouncements have been made by other courts, as mentioned by the panel majority, and so I obviously cannot complain that its conclusion in this regard is without any legal support. My problem is in understanding the rationale for such a doctrine. Mechanical, electrical, and electronic devices fail or malfunction routinely--some more routinely than others. A speck of dust, a change in temperature, misuse, an accidental unforeseen trauma--many things can cause these devices to malfunction.
 
 
 16
 Swann, 620 A.2d at 1015-16 (Wilner, C.J., concurring and dissenting).
 
 
 17
 The Maryland Supreme Court reversed the intermediate appellate court, thereby reinstating the jury verdict for the defendants, for the first reason expressed in Judge Wilner's dissent--i.e., that evidence regarding the alleged specific negligence of the defendant precludes resort to res ipsa loquitur. As for Judge Wilner's second argument, the Supreme Court quoted the passage presented above but expressly declined to reach the question whether "res ipsa loquitur should never be applicable in elevator misleveling cases." Dover, 638 A.2d at 774 n. 4 (emphasis added). Nonetheless, the Court had little apparent trouble in concluding that the doctrine did not apply in the particular circumstances before it:
 
 
 18
 This case involved the complicated inner workings of elevator number two's machinery which were outside the scope of the average layperson's common understanding and knowledge, and expert testimony was a necessary element of the plaintiff's case.
 
 
 19
 Id. at 774.
 
 
 20
 The same reasoning applies here. As the district court observed: "Though not as complex as an elevator, a heater involves mechanical parts, combustion, and electrical circuits, and it is not so simple a device that the average layperson's understanding and knowledge permit proceeding on a res ipsa theory, without expert testimony." To be sure, most jurisdictions would probably find the first element of the test satisfied in cases concerning "the explosion of boilers or other objects." See Swann, 620 A.2d at 1011-12 (citing cases and authorities). But the Dover decision suggests that Maryland courts should be unusually hesitant to excuse the absence of expert testimony. See, e.g., 638 A.2d at 774 ("This is not simply a case of a barrel falling from the defendant's window onto some hapless pedestrian's head. As a result, the application of res ipsa loquitur was not appropriate."). Therefore, although the question is close, the district court determined correctly that Moser's simple reliance on jurors' common knowledge was insufficient to make out res ipsa 's first element.
 
 B.
 
 21
 In a part of its decision not disturbed by the Court of Appeals of Maryland, the Maryland Court of Special Appeals determined in Swann that the plaintiff could show that the elevator maintenance company, Dover, had exclusive control of the elevator. The court explained:
 
 
 22
 Dover manufactured, installed, and was under a continuing contractual obligation to maintain and repair elevator number two. CW [the building manager] was obligated to prohibit others from making repairs or adjustments to the elevator. There was absolutely no evidence indicating that Prudential [the building owner], CW, or IBM[the tenant] attempted to repair the elevator....
 
 
 23
 Furthermore, there was no evidence suggesting that the elevator was tampered with, altered in any way, or subjected to abuse.
 
 
 24
 620 A.2d at 1010.
 
 
 25
 In the present case, the district court reasoned that the very factors relied on in Swann cut against Moser. First, the evidence was undisputed that somebody other than the defendants--specifically, farm employee Robert Curtis--did repair the Heater. Second, it was likewise undisputed that the farm's employees did use the Heater's reset button. In light of expert deposition testimony "to the effect that the only thing that could cause a heater such as the Re[s]nor to explode is someone's having flooded it with oil by repeatedly pressing its reset button," the district court concluded that control of the "instrumentality" includes control of the reset button.
 
 
 26
 In response, Moser argues that Curtis's repair occurred too long before the explosion to be relevant and that the employees' pressing of the reset button is indistinguishable from the pressing of elevator buttons by passengers in Swann (and therefore that it has no bearing on the "exclusive control" issue).
 
 
 27
 Moser's first assertion is baseless. Simply put, Moser provides no reason for concluding that actions undertaken in the fall of 1991 are somehow irrelevant as a matter of law to the question whether defendants had "exclusive control" of an instrumentality that malfunctioned in March of 1992. While it may well be true, as a matter of fact, that the fall 1991 repair did not contribute to the March 1992 explosion, Moser did not identify any evidence in the record that would have required such a finding. Because Curtis's repair may have been negligent and may have caused the explosion, a jury could not find that defendants' control over the Heater was exclusive.
 
 
 28
 Moser's second argument is also unpersuasive. Buttons are not per se irrelevant to the "exclusive control" question. Rather, the general inquiry must be whether the defendants had exclusive control over all parts of the instrumentality that might plausibly have caused the accident. The fact that passengers pressed elevator buttons was deemed irrelevant in Swann only because there was no basis to believe that the pushing of floor buttons could have been causally connected to the elevator's mislevelling. Here, in contrast, the defendants pointed to abundant evidence in the record that indicated that excessive pressing of the Heater's reset button could have contributed to the explosion. Although Moser insists that she did not push it excessively, she does not contend that negligent operation of the reset button could not have caused the explosion. Therefore, the defendants are right to observe that a critical distinction between this case and Swann is that "the reset button on the Heater, ... unlike the elevator controls in Swann [,] could have caused the malfunction." Defendants' Brief at 11. Because farm employees had access to, and in fact did use, the reset button, the defendants did not have exclusive control over the relevant parts of the instrumentality.
 
 III.
 
 29
 For the foregoing reasons, the judgment of the district court is
 
 AFFIRMED
 
 
 *
 Agway also sought summary judgment on the ground that it was not responsible for any negligence of Miller because he was an independent contractor. The district court dismissed Moser's suit without reaching that issue. We too find it unnecessary to explore Agway's potential liability had Miller been found negligent