STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-AP-16-03

)
FCA US LLC,                                     )
                                               )
                    Petitioner,                )          **ORDER ON FCA US LLC's**
                                               )          **M.R. Civ. P. 80C APPEAL**
        v.                                     )
                                               )
MATTHEW DUNLAP, in his capacity as             )
Secretary of State of the State of Maine, &    )
DARLING'S,                                      )
                                               )
                    Respondents.               )

Petitioner FCA US LLC appeals the Maine Motor Vehicle Franchise Board's (the

"Board") Order On Remand dated October 14, 2016. FCA is represented by Attorneys

Robert D. Cultice and Daniel Rosenthal. Attorneys Judy Metcalf and Noreen Patient

represent Respondent Darling's. Intervener Maine Auto Dealers Association is

represented by Attorney Matthew Warner.

    I.    Background

        a.  Facts

This action arises from the question of whether 10 M.R.S. § 1176 allows

Darling's and FCA to enter an agreement requiring Darling's to provide verification of

the retail rate customarily charged for labor beyond the posting requirement found in

Section 1176 for the purpose of reimbursement for warranty work performed. The

parties' agreement required further documentation on the part of Darling's in order to

receive reimbursement for warranty repair work performed on behalf of FCA. Further

1

details of the history of the dispute may be found in the Court's Order on FCA US LLC's M.R. Civ. P. 80C Appeal dated June 6, 2016.

b. Remand

In the Court's Order on FCA US LLC's M.R. Civ. P. 80C Appeal dated June 6, 2016, the Court found that the legislative intent of the statute was to make the posting of the retail rate customarily charged in a place conspicuous to the dealer's customers determinative of the rate by which the dealerships would be reimbursed for warranty work performed on behalf of manufacturers. The Court remanded the matter to the Maine Motor Vehicle Franchise Board with instructions to find whether the statute permitted the parties to contract to require the dealers to provide further verification of the retail rate customarily charged.

On remand, the Board determined that even where terms requiring further verification of the retail rate customarily charged appeared in Dealer agreements, "§1182 precludes enforcement of such requirements." (Order on Remand, Oct. 14, 2016 at 2). FCA appeals from the Board's determination.

II.     Standard of Review

Board decisions appealed to the Superior Court pursuant to 10 M.R.S.A. § 1189-B(1) are reviewed for errors of law. When the claimed error involves the interpretation of a statute, the Court reviews the Board's interpretation de novo. *See Ford Motor Co. v. Darling's*, 2014 ME 7, ¶ 15, 86 A.3d 35. "When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive, is entitled to great deference and will be upheld unless the statute plainly compels a contrary result." *Wood v. Superintendent of Ins.*, 638 A.2d 67, 70 (Me. 1994)

2

(quotation omitted). If the statute is ambiguous, the Court reviews whether the agency's construction is reasonable. *Guilford Transp. Indus. v. Pub. Utils. Comm'n*, 2000 ME 31, ¶ 11, 746 A.2d 910 (citation omitted).

Here, the Board administers Section 1176 and its interpretation thereof is entitled to deference unless the statute compels a contrary result. *See* 10 M.R.S.A. § 1188(1), (2) (the Board shall "review written complaints filed with the [B]oard by persons complaining of conduct governed by this chapter" and the Board shall "issue written decisions and may issue orders to a franchisee or franchisor in violation of this chapter").

III.    Discussion

The Court previously determined that the statute was ambiguous as to whether the contract terms requiring verification of the retail rate customarily charged were prohibited. On remand, the Board found that any requirements of proof of the retail rate customarily charged for labor performed other than the statutorily required posting of the rate would be in violation of Chapter 204 of Title 10 of the Maine Revised Statutes and therefore "deemed against public policy and ... void and unenforceable." 10 M.R.S. § 1182. This interpretation of statute is reasonable, therefore, the Court defers to the expertise of the Board.

In this case, the Court has already found that the legislative intent of the statute was to level the power inequality between manufacturers and dealers with respect to reimbursement for warranty repairs performed. It would produce an absurd result if manufacturers were able to use their superior bargaining power to contractually eliminate the safeguards set out by the Legislature. The Court defers to the Board's interpretation of statute and affirms the decision of the Board.

3

IV. Conclusion

The Court affirms the decision of the Maine Motor Vehicle Franchise Board.


Dated: 8/4/17

Michaela Murphy
Justice, Business & Consumer Court


Entered on the Docket: 8/4/17
Copies sent via Mail___ Electronically ✓

4

**FCA US LLC. v.**
**Matthew Dunlap, in his capacity as Secretary of State**
**of the State of Maine, and Darling's**

**BCD-AP-16-03**

### Plaintiff

**FCA US LLC.**                                    Daniel Rosenthal, Esq.
                                                   One Canal Plaza
                                                   Portland, ME 04101

### Defendants

**Matthew Dunlap, in his capacity as**
**Secretary of State of the State of Maine**       William Laubenstein, AAG.
                                                   6 State Hours Station
                                                   Augusta, ME 04333

**Darling's**                                      Judy Metcalf, Esq.
                                                   PO Box 9
                                                   Brunswick, ME 04011

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-AP-16-03 ✓

)
FCA US LLC,                                    )
                                               )
                 Petitioner,                   )          ORDER ON FCA US LLC's
                                               )          M.R. Civ. P. 80C APPEAL
        v.                                     )
                                               )
MATTHEW DUNLAP, in his capacity as             )
Secretary of State of the State of Maine, &    )
DARLING'S,                                     )
                                               )
                 Respondents.                  )

Petitioner FCA US LLC ("FCA") appeals from the Maine Motor Vehicle Franchise

Board's Order on Cross Motions for Judgment on the Pleadings (the "Order") and the Final

Order that incorporates the Order (the "Final Order"). At the heart of the parties' dispute is the

meaning of, and proof required to demonstrate, the "retail rate customarily charged" for labor

that Darling's performs on non-warranty repairs. Darling's argues that the Board did not err

when it determined that the retail rate customarily charged for non-warranty labor is established

by the dealer/franchisee posting its rate in a place conspicuous to its retail customers. FCA

contends that this interpretation conflicts with the plain language of 10 M.R.S.A. § 1176

("Section 1176"), misinterprets relevant case law, and produces absurd results by permitting

dealers to receive reimbursement for warranty labor at the posted rate even if that rate was never

charged to non-warranty customers.

I.      Background

Darling's is a duly authorized franchisee of FCA. (R. 116, 151.) Pursuant to its

obligations as a FCA franchisee, Darling's performs warranty repairs, including the provision of

parts and the performance of labor on qualified FCA vehicles. (R. 116, 152.) Darling's and

other Maine automobile dealers are entitled to reimbursement for such warranty repairs by manufacturers as required by Maine law. With respect to reimbursement for labor on warranty repairs, Maine law provides, in pertinent part, that:

> [T]he franchisor shall reimburse the franchisee for any labor so performed at the retail rate customarily charged by that franchisee for the same labor when not performed in satisfaction of a warranty; as long as the franchisee's rate for labor not performed in satisfaction of a warranty is routinely posted in a place conspicuous to its service customer.

10 M.R.S.A. § 1176 (2015).

On or about November 1, 2013, Darling's alleges that it posted new hourly labor rates for repairs performed for its non-warranty retail customers at its Augusta location and provided FCA proof of its posting. (R. 120-121.) After November 1, 2013, Darling's submitted "Supplemental Claims" to FCA demanding the difference between the hourly labor rate paid by FCA and Darling's posted hourly labor rate at the Augusta location.[1] (R. 122.) Similarly, Darling's adopted the ADP Serving Pricing Guides in determining its "flat rate" labor times for its Ellsworth location on or about November 1, 2013. (R. 124.) Darling's asserts that its adoption of the ADP Service Pricing Guides did not require any alteration to the posting at its Ellsworth location because the existing post already advised of alternative flat rates for labor operations. (R. 124-125.) After November 1, 2013, Darling's submitted supplemental claims for its Ellsworth location to FCA seeking the difference between the warranty rate paid by FCA and Darling's flat rate pricing. (R. 125.) FCA requested additional information regarding each repair for which a Supplemental Claim was submitted at both locations, but Darling's declined to provide the information. (R. 122, 125-126.) FCA rejected each of the Ellsworth and Augusta

---

[1] In the alternative, Darling's demanded the difference between the warranty rate paid by FCA and Darling's flat rate pricing using the ADP Service Pricing Guides for warranty repairs. (R. 122.)

2

Supplemental Claims and refused to pay Darling's posted labor rate on warranty claims from both locations from November 1, 2013 through September 7, 2014. (R. 123, 125-126.) On or about September 8, 2014, Darling's again posted increased retail labor rates for its Augusta and Ellsworth locations. (R. 127-128, 131-132, 441.) FCA refused to pay the new rates Darling's requested and continued to reimburse Darling's at the rates established up to November 1, 2013. (R. 130, 133, 442.)

A.    Procedural History

On March 31, 2014, FCA filed a complaint in the United States District Court for the District of Maine. (R. 2, 8-16.) Pursuant to 10 M.R.S.A. § 1190-A, Darling's commenced the Board action at issue in the present appeal and filed a motion to stay the action commenced by FCA in the U.S. District Court. (R. 39-81, 439.) The U.S. District Court granted Darling's motion to stay and remanded the matter to the Board for adjudication. (R. 84-106, 439.) On November 25, 2014, Darling's filed its Second Amended Complaint. (R. 116-136.) Thereafter, both FCA and Darling's filed motions for judgment on the pleadings regarding the warranty rate FCA must reimburse Darling's at for labor. (R. 181-256, 260-283.)

B.    The Board's Determinations

On June 16, 2015, the Board determined that, in contrast to establishing a reimbursement rate for parts, Section 1176 only requires "that a franchisee's non-warranty labor rate be routinely post[ed]...in a place conspicuous to its service customers." (R. 440.) In support of this determination, the Board discussed the *Amended Recapitulation of Previous Rulings and New Findings of Fact and Conclusions of Law* (the "*Amended Recapitulation*") that accompanied the United States District Court for the District of Maine's Certificate of Questions of State Law to

3

the Law Court. (R. 442.)[2] The Board focused on the *Amended Recapitulation*'s discussion of the legislative history of Section 1176 concluding that the statute was concerned with "automakers' superior bargaining power" enabling them to "coerce dealers into accepting reimbursement *at a rate* significantly below what dealers routinely charge ordinary retail customers ...." (*Id.*) (quoting *Darling's d/b/a Darling's Bangor Ford v. Ford Motor Co.*, Docket No. 950398-B-H (D. Me. Apr. 1, 1998), *Amended Recapitulation* at 16-17) (quoting Final Report of the Joint Standing Committee on Business Legislation, on its study pursuant to Joint Order H.P. 1459 ("Final Report"), at 4-5 (Jan. 25, 1980)) (emphasis from *Amended Recapitulation* omitted). The Board noted that the Joint Standing Committee on Business Legislation concluded, in pertinent part, that:

> The legislative concern was labor charges in general; there was no suggestion that the concern was limited to hourly rates ... [and that] the only equitable method of express warranty reimbursement is reimbursement at the regular *retail rates* .... We propose very simply that an automaker be required to reimburse a dealer for labor at the *retail rate* customarily charged by the dealer for nonwarranty repairs ... There is only one condition that needs to be imposed to ensure that the dealer's rate is bona fide—it should be routinely posted in a conspicuous place."

(R. 442) (*Amended Recapitulation* at 16-17) (quoting Final Report at 4-5). After briefly discussing the Law Court's response to the Certified Question of the Maine Federal District Court, the Board explained that "Darling's central contention, that conspicuous posting of labor rates to its service customers with notice to FCA, establishes those rates under § 1776, has long been established as a matter of Maine law." (R. 443.)[3]

---

[2] The District of Maine's Certificate of Questions was answered by the Law Court in *Darling's v. Ford Motor Co.*, 1998 ME 232, 719 A.2d 111.

[3] The Board explained that it would address, in a later determination, the following issues: whether Darling's November 2013 and September 2014 notices to FCA of its hourly and flat rates were sufficient under section 1776; if the notices were sufficient, whether FCA was required to begin reimbursing Darling's at those rates; whether section 1176 allowed Darling's to change its customary retail rate twice within a calendar year; whether section 1176 allowed FCA

4

On November 20, 2015, the Board granted Darling's motion for the entry of the Final Order incorporating the Order in Darling's favor, imposing civil penalties of $2,000 on FCA, and ordering a determination as to Darling's attorney fees and costs following the final resolution of any appeal. (R. 490-491.) The Board also approved the parties' stipulation of dismissal as to any remaining claims by Darling's that had not been resolved by the Final Order. (R. 490.) FCA filed a timely Notice of Appeal and Petition for Review with this Court on December 17, 2015. (R. 492-493.)

## II.    Standard of Review

Board decisions appealed to the Superior Court pursuant to 10 M.R.S.A. § 1189-B(1) are reviewed for errors of law. When the claimed error involves the interpretation of a statute, the Court reviews the Board's interpretation de novo. *See Ford Motor Co. v. Darling's*, 2014 ME 7, ¶ 15, 86 A.3d 35. "When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive, is entitled to great deference and will be upheld unless the statute plainly compels a contrary result." *Wood v. Superintendent of Ins.*, 638 A.2d 67, 70 (Me. 1994) (quotation omitted). If the statute is ambiguous, the Court reviews whether the agency's construction is reasonable. *Guilford Transp. Indus. v. Pub. Utils. Comm'n*, 2000 ME 31, ¶ 11, 746 A.2d 910 (citation omitted).

Here, the Board administers Section 1176 and its interpretation thereof is entitled to deference unless the statute compels a contrary result. *See* 10 M.R.S.A. § 1188(1), (2) (the Board shall "review written complaints filed with the [B]oard by persons complaining of conduct

to require Darling's to submit supplemental claims since November 2013 and, if so, what supplemental information Darling's had to submit; and whether Darling's is entitled to costs and attorney's fees. (R. 443-444.)

governed by this chapter" and the Board shall "issue written decisions and may issue orders to a franchisee or franchisor in violation of this chapter").

### III.    Discussion

The disputed statutory section, 10 M.R.S.A. § 1176 provides, in pertinent part:

> [T]he franchisor shall reimburse the franchisee for any labor so performed at the retail rate customarily charged by that franchisee for the same labor when not performed in satisfaction of a warranty; as long as the franchisee's rate for labor not performed in satisfaction of a warranty is routinely posted in a place conspicuous to its service customer.

10 M.R.S.A. § 1176.

FCA argues that the Board erred by interpreting Section 1176 as only requiring a franchisee to post its non-warranty labor rate in a place conspicuous to its service customer in order to establish its retail rate customarily charged for warranty reimbursement. In support, FCA contends that the Board's interpretation effectively reads the phrase "customarily charged" out of the statute, renders the statutory language "retail rate customarily charged" mere surplusage by equating the "posted rate" with the "retail rate customarily charged, and leads to the absurd result of requiring a manufacturer to reimburse a dealer for whatever rate it "posts," no matter how high the rate and regardless of whether that rate was ever charged to a customer. FCA further asserts that the Board's interpretation is not supported by *Darling's v. Ford Motor Co.*, 1998 ME 232, 719 A.2d 111 ("*Darling's I*"), and that the Board erroneously relied on legislative history without first concluding that Section 1176 was ambiguous. Darling's responds that the plain language of Section 1176 compels and supports the Board's interpretation.

"When interpreting a statute, [the Court] seeks[s] to give effect to the intent of the Legislature by examining the plain meaning of the statutory language and considering the

6

language in the context of the whole statutory scheme." *Darling's I*, 1998 ME 232, ¶ 5, 719 A.2d 111 (citations omitted). Only when a statute is ambiguous should the Court look beyond the plain language of the statute and the context of the statutory scheme "to indicia of legislative intent such as the statute's history and its underlying policy." *Fuhrmann v. Staples*, 2012 ME 135, ¶ 23, 58 A.3d 1083 (quotation omitted). "A statute is ambiguous if it is reasonably susceptible to different interpretations." *Id.* (quotation omitted). "When a statute administered by an agency is ambiguous, [the Court] review[s] whether the agency's interpretation of the statute is reasonable and uphold[s] its interpretation unless the statute plainly compels a contrary result." *Id.* (quotation omitted). The Court avoids "statutory constructions that create absurd, illogical or inconsistent results." *Darling's I*, 1998 ME 232, ¶ 5, 719 A.2d 111 (citation omitted).

Here, Section 1176 is ambiguous as to whether the franchisee's act of publicly posting its rate for non-warranty labor in and of itself establishes the franchisee's retail rate customarily charged. On the one hand, Section 1176 could be reasonably read as directly linking the posting of the franchisee's rate for non-warranty labor with the establishment of its retail rate customarily charged. On the other hand, given that Section 1176 refers to a "retail rate customarily charged," the statute could also be read to provide the franchisor an opportunity to verify, through reasonable means, that the franchisee's posted rate is in line with the retail rate it customarily charges. Because Section 1176 contains ambiguity as to this point, the Court looks to indicia of legislative intent.

As the Board's Order made clear, the Final Report of the Joint Standing Committee proposed that the franchisee's retail rate customarily charged for non-warranty labor be established through the act of posting said rate in a conspicuous place. The Final Report explained, in pertinent part, that "[f]or many years…the automakers' superior bargaining power

7

has enabled them to coerce dealers into accepting reimbursement at a rate significantly below what dealers routinely charge ordinary retail customers for non-warranty repairs." Final Report at 4. While the Committee notes that intervention is normally not advised or justified, the Committee believes that under the present circumstances "the only equitable method of express warranty reimbursement is reimbursement at regular retail rates." *Id.* The Committees proposed:

> "very simply that an automaker be required to reimburse a dealer for labor at the retail rate customarily charged by the dealer for non-warranty repairs. Our only concern need be that the rate is legitimate. *There is only one condition that needs to be imposed to ensure the dealer's rate is bona fide – it should be routinely posted in a conspicuous place. The rate itself should be determined through competition in the marketplace.*"

*Id.* at 4-5 (emphasis added). This language makes clear that the Joint Standing Committee on Business Legislation recommended, and the Legislature subsequently adopted, a statute under which the check on ensuring the dealer's retail rate customarily charged for non-warranty repairs was accurate was that the rate "be routinely posted in a conspicuous space." Competition, the Final Report recommended, would determine the posted rate and keep dealers honest. Accordingly, the Board's Order did not err in determining that the only prerequisite Section 1176 requires in order to establish the "retail rate customarily charged" is the posting of said rate in a place conspicuous to its service customers.[4]

A. Whether Section 1176 Permits Verification Beyond the "Posting" Requirement

FCA contends that the Board's Order was overly broad and unjustifiably prevented FCA from exercising its contractual right to inspect Darling's books and records to ensure that its "posted rate" was the same as its "retail rate customarily charged." Darling's responds that this

---

[4] Given the clear legislative history behind this portion of Section 1176, the Court notes that it would reach the same result regardless of whether it reviewed the Board's Order de novo or afforded the Board's interpretation of Section 1176 deference.

argument is waived because FCA did not raise it in the underlying proceedings, that the contractual agreements at issue are not in the Record, that the alleged right to inspect only pertains to warranty claims; and that the alleged contractual right is void and unenforceable pursuant to 10 M.R.S.A. § 1182.

Here, FCA at least raised the question of whether Section 1176, while not requiring verification, permits a franchisor to impose—through agreement—reasonable verification of a franchisee's retail rate customarily charged before the Board. It is not clear, however, whether the Board's Order considered this argument. This is because the Board's Order determined: 1) the act of posting labor rates to service customers, with notice to the franchisor, establishes the retail rate customarily charged under Section 1176; and 2) Section 1176 "does not require [Darling's] to furnish internal records or otherwise verify to FCA its warranty reimburse rate." (R. 443.) The Board's Order did not explicitly address whether Section 1176, while not requiring, nevertheless permits franchisors and franchisees to contractually agree to additional verification measures beyond the posting requirement imposed by Section 1176. Because it is not clear whether the Board considered this issue, the Court remands the matter for the Board's determination and/or clarification thereon.

IV.  Conclusion

For the reasons discussed above, the Court affirms that the Board did not err in determining that the only prerequisite 10 M.R.S.A. § 1176 requires in order to establish the "retail rate customarily charged" is the posting of said rate in a place conspicuous to its service customers. The Court, however, remands for the Board's consideration and/or clarification, the question of whether Section 1176, while not requiring, nevertheless permits franchisors and

9

franchisees to agree to additional verification measures of the franchisee's "retail rate customarily charged" beyond the "posting" requirement in Section 1176.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: June 6, 2016

Michaela Murphy
Justice, Business & Consumer Court

Entered on the Docket: 6.7.16
Copies sent via Mail___Electronically ✓

10